# CHARLESTON.

ROGERSON *v.* SHEPHERD.

*(GREEN, JUDGE, absent.)

Submitted September 13, 1889.—Decided November 22, 1889.

| 33 | 307 |
| 40 | 288 |
| 33 | 307 |
| 46 | 347 |
| 33 | 307 |
| 58 | 674 |
| 33 | 307 |
| e 60 | 400 |
| 33 | 307 |
| 61 | 518 |
| 33 | 307 |
| e62 | 54 |
| 62 | 224 |

RIGHT OF WAY—OBSTRUCTION—INJUNCTION.

O., F., and H., being the owners of a large tract of land sell on the 1st day of March, 1856, two parcels of said land adjoining each other—one to G., the other to K. The tract sold to G. is inaccessible to a public road, except by passing over the land sold to K., who is acting as the agent of O., F. and H. in selling portions of said large tract lying back of his, and also back of the tract sold G. K., with the assistance of G. and C., who also about that time purchased a tract of said land adjoining and back of the parcel sold to G., opened and located a road through the land of K., and a fence was built on each side thereof, under the direction of K., at the expense of O., F. and H., which road was used openly and publicly by G. and those claiming under him and others for thirty years. In 1863, S. became the owner by purchase of the tract originally purchased by K., and occupied the same, allowing the said road to be publicly used and remain open and unobstructed until the 1st of September, 1887, when he fenced it up, and opened another and different road through his land, and erected three gates across it. *Held:* (1) that G., or those claiming under him, had a right by injunction to compel S. to remove said obstruction, and restore to him or them an open way through said land of S.; (2) that if there has been an open and public use of an easement for more than twenty years, unexplained, it will be presumed to be under a claim of right, and adverse; (3) that where a party sells two adjoining tracts of land from one of which there is access to a public highway only by passing over the other, that fact creates a right of way, of necessity; (4) that if a party has acquired an open and unobstructed right of way over land by publicly using the same in that manner, without objection, for more than twenty years, he thus acquires a right to the unobstructed use of said way.

*J. B. McLane* for appellant.

*Ewing, Melvin & Riley* for appellee.

ENGLISH, JUDGE:

On the 21st day of November, 1887, the appellant, James Rogerson, presented a bill in equity to a judge of the Circuit

*On account of illness,

Court of Marshall county, praying an injunction to restrain the defendant, Isaac Shepherd therein named, from obstructing the private way leading from the plaintiff's farm through the farm of said Isaac Shepherd to the Waynesburg road, and that he be required to remove all gates, fences and other obstructions already placed over and upon the same by him, which injunction was awarded.

The controversy in this cause appears to have originated from the following state of facts: The plaintiff and defendant in said suit are the owners of adjoining tracts of land— the plaintiff's tract containing sixty two acres and a fraction and the defendant's tract containing 150 acres—which two tracts of land originally formed part of a tract containing about 2,000 acres, which was conveyed by Andrew P. Woods, in April, 1854, to Samuel Ott, William Flemming, and C. W. Heiskell. It appears that on the 1st day of March, 1856, said Ott, Flemming, and Heiskell conveyed said sixty two acres, now owned by the appellee, Rogerson, to Lemuel L. Gardner; and on the same day said parties conveyed said tract of 150 acres now owned by appellant, to Charles Kemple; and said parties derived their title to their respective tracts through several mesne conveyances; and the land of the appellant, Isaac Shepherd, is so located that it lies between said tract of sixty two acres owned by appellee, and the Waynesburg road, a public highway leading from the city of Wheeling, in Ohio county, to Moundsville, in Marshall county; and, in order to get to said public road, it was necessary to pass through the lands aforesaid of appellant. The plaintiff, in his bill, alleged that this necessity was recognized, and a way was marked out and made over said land to said public road from the date of said deed down to within a few days before the filing of said bill; and that plaintiff, and those under whom he claimed, had, since the date of said Gardner deed, traveled thereon with their horses, cattle and wagons, for all and any purpose, without leave or license, having enjoyed and claiming an open way, free from any obstruction whatever; and that the necessity for said way still continues; and that no other convenient way can be made, over which plaintiff could have ingress and egress to and from his said farm; and that he, and those under

whom he claimed, had occupied and traveled over said way for more than thirty years last past; and that about the 1st day of November, 1887, the said Isaac Shepherd arbitrarily, unlawfully and against the plaintiff's consent changed, altered and re-located said road, obstructing and rendering the same impassable, and obstructing the new way made by him with no less than three gates, without any right whatever. The plaintiff also alleges that when the defendant, Isaac Shepherd, became the owner of said tract of land, on the 21st day of November, 1863, over which said way lies, the said road was then open, notorious, and adverse to the said Shepherd, and those under whom he claims, and so has remained in use by plaintiff, and those under whom he claims, until about the 1st day of November, 1887, when it was unlawfully obstructed by defendant and rendered impassable by building a fence across said road.

The defendant demurred to plaintiff's bill, and answered, denying the material allegations in said bill contained, and claimed that the road mentioned in said bill was laid out and made by defendant, and those under whom he claims, for his and their convenience, and for the use of the farm over which it passes, and not for the use of plaintiff, or those under whom he claimed, or any of them; that ever since he became the owner of said farm he has kept said road in repair, and under fence, when he desired it, and had frequently changed its location; and that plaintiff had only used the same by his permission; and that the new road made by him is a good one, and the gates can be conveniently opened and shut and are necessary to the protection of his farm.

A considerable number of depositions were taken in the cause by both plaintiff and defendant; and, the cause being submitted, the court decreed that the plaintiff "is entitled to the right of way from his farm over the lands of the defendant to the Waynesburg road, and that the defendant has no right to obstruct the same with fence, or gates, or otherwise," and perpetuated the injunction. From this decree the defendant applied for and obtained an appeal to this Court.

The first error relied on by the defendant is that the Circuit Court erred in not dismissing the suit upon the

pleadings for want of equity; and, while the Court did not act formally upon the demurrer, yet, in the case of *Hinchman* v. *Ballard*, 7 W. Va. 152, it was held: "When a demurrer is filed to a bill, and the Court proceeds to adjudicate, and does adjudicate, the principles of the cause in favor of the plaintiff, without first acting *pro forma* upon the demurrer, it will be considered that the Court, in rendering the decree adjudicating the principles of the cause, considered the sufficiency of the bill, and substantially overruled the demurrer thereto; and this Court will not reverse the decree adjudicating the principles of the cause for this cause alone." The Circuit Court then, under this ruling, did overrule said demurrer and, we think, acted rightly in so doing. It is true the plaintiff had a remedy at law, to some extent; but the remedy was not complete and adequate, and the pursuit of his remedy at law to recover damages for a continuous obstruction and nuisance would lead to a multiplicity of suits, to avoid which is one of the principal grounds of equity.

The appellant in his brief, cites the case of *Kemble* v. *Cresap*, 26 W. Va. 603. In that case it is held: "It is not sufficient in such case that the bill contain general allegations of irreparable injury. The facts constituting such injury must be set forth." Now, the plaintiff, in his bill, sets forth that those occupying his land can have no other ingress or egress to and from the said farm of plaintiff, except over the land lying between him and the Waynesburg road, aforesaid. This allegation must be taken as true upon demurrer; and, taken in connection with the further allegation that the defendant had obstructed said way and rendered it impassable by fencing across the same, the facts constituting the injury complained of appear to be sufficiently set forth; and, if allowed to continue, the injury is certainly irreparable, as the open and unobstructed way to which he claims to be entitled by being used openly by himself, and those under whom he claims, for more than thirty years, is effectually closed against him.

Did the court below commit an error in not dismissing the plaintiff's bill upon the evidence?

Referring to the deposition of Alexander Kemple, who

states that he is a son of Charles Kemple, who purchased the
tract of land now owned by Isaac Shepherd from Ott, Flem-
ming, and Heiskell, and the same through which the road
in controversy runs, we find that, in answer to the eleventh
question, in which he is asked, "How long have you known
the road from the Rogerson farm to the Waynesburg road?"
he replied: "I am not positive whether it was opened in
1854 or 1855. It was not later than 1855." He further
states that Charles Kemple located the road, and his pur-
pose was to give a road to persons who purchased east of his
tract. In the locating, there were Charles Kemple, Lemuel
Gardner, both the McWhorters, and himself. Jimmy Mc-
Whorter first opened the lane, built the fences, and made
the rails, and, in making the road, Lemuel Gardner worked
some on it. He thinks George McCombs worked on it too,
and he held the plow; that McWhorter built the fence un-
der a contract with said Charles Kemple, as agent for Ott,
Heiskell, and Flemming. When asked: "How long has it re-
mained an open way since your father had it opened and
fenced by McWhorter?" he answered: "It would be about
thirty two years, but I don't know about its being opened for
the last seven or eight years, as I have not been down there."
He was again asked: "Do you know anything about any
agreement with Gardner with reference to a road through
the Shepherd land to the Waynesburg road?" and he
answered: "The road was to run to the Gardner land, for
the benefit of the land east of the Shepherd land." To the
question: "Could Rogerson reach the Waynesburg road or
any other public road over his own land?" he replied, "No,
sir." When asked: "Who told you there was an agree-
ment?" he answered: "I suppose it was my father, or per-
haps both of them together. The whole thing was talked
over when we were locating the road."

John C. Beck, in his deposition, states that he has known
the road since 1877, in March, and that it has been used as
all other roads are used; and he also states that if the gates
are allowed to remain on the new road, the Rogerson farm
will be reduced in value, so that he would not give more
than one half as much for it.

Peter O. Criswell states in his deposition that he purchased

the tract of land adjoining the farm of the appellee, James Rogerson, now owned by Mr. Moore; that he purchased the same in 1854 or 1855 from Charles Kemple, acting as the agent of Ott, Heiskell, and Flemming; and that said road was made and located for the purpose of selling that land back in there, and for the use of the parties that bought it; and that when he purchased from said Kemple as such agent he had his word that the road should be kept open, and has known it to be an open road between twenty five and thirty years; and, when asked: "Why can't Gardner and others living on the lands have any other road except through the Shepherd lands to the Waynesburg road?" answered: "It is bounded by two very deep hollows, and lying on a ridge leading direct from the Waynesburg road."

William Kemple, in his deposition, states that that road has been there since 1854; that at the time said Shepherd bought said farm there was a fence on each side of the road leading from the Rogerson land to the Waynesburg road and that said Shepherd changed said road last summer; that said Charles Kemple was the agent of Ott, Heiskell, and Flemming, who originally owned both of said tracts of land; that he negotiated the sale of said tract of land now owned by said Rogerson to Lemuel Gardner; and that there could not at any time have been any other convenient way from said Rogerson farm to the Waynesburg road, or any other public highway, because there is an exceedingly deep hollow that runs around it, that would make it impossible to make a road to any other county road.

At the time said Isaac Shepherd purchased said tract of land the evidence clearly shows that said road was well marked and defined. He says in his own deposition that he moved on said land in the fall of 1863, and at that time said road had a fence on each side of it, near two thirds of the distance, and the road was open; aud that he has had a fence on the right-hand side, for several years, clear down to the Rogerson line; that Lemuel Gardner lived on the land now owned by said Rogerson; and that he supposes he went in and out that road, and that he allowed everybody to go in and out there. Charles Kemple, however, who was the agent of Ott, Heiskell, and Flemming in making sale of

these lands under whom said Isaac Shepherd holds his said land, assisted in opening this road, and in doing so agreed with Lemuel Gardner, under whom the plaintiff, Rogerson, holds said sixty two acres of land, that the road was to run to the Gardner land for the benefit of the land east of the Shepherd land; and this agreement, no doubt, had considerable influence in inducing said Gardner to purchase said land now owned by plaintiff, Rogerson.

But, if this way had not been designated by the grantors of these tracts of land, acting through their agent, who in this instance had become the owner of the servient tract of land at the time said way was so designated, and which action had been acquiesced in by the succeeding owners thereof for more than thirty years before said way was obstructed, the evidence shows that those owning the land now owned by the appellee, James Rogerson, were entitled to this way by necessity. In the case of *Collins* v. *Prentice*, 15 Conn. 39, the Court holds as follows: "If a man having two parcels of land, to one of which he has no access, except over the other, convey such inaccessible parcel, the grantee has a right of way to it over the other parcel, as incident to the grant."

It will be perceived, by reference to the copies of the deeds exhibited in the cause, that the deed to Charles Kemple, and the deed to Lemuel L. Gardner, from Ott, Flemming, and Heiskell, bear the same date, and that they are parts of the same tracts of land; and it appears from the proof that they adjoin each other, the tract conveyed to said Charles Kemple lying between said Gardner tract and the Waynesburg road; and it also appears that said Gardner recorded his deed in May, 1856, and said Kemple had his recorded in the July following. Said Kemple acted as the agent of said Ott, Flemming, and Heiskell, not only in selling said tract of land to Lemuel L. Gardner, but also in selling the tract adjoining and back of it to Peter Criswell; for it will be remembered that Peter Criswell, in his deposition, when asked: "State what you know of that road being made and located, and for what purpose?" answered: "It was made and located for the purpose of selling that land back in there, and for the use of the parties that bought

it,"—and, when asked: "When you · purchased your farm from Charles Kemple, what assurance had you, if any, that this road would be kept open?" he answered: "I had his word that the road would be kept open. I don't know whether there was any writings to that effect or not." Alexander Kemple, in answer to question twelve, in his deposition says Charles Kemple located it, and his purpose was to give a road to persons who purchased land east of his tract; and further on he states that Lemuel L. Gardner worked on the road when it was opened, and that McWhorter built the fence under a contract with Charles Kemple, as the agent of Ott, Flemming, and Heiskell, showing not only an agreement with the original owners of said land, through their agent, that said road should be opened, but a part performance of said agreement by the construction of a fence along the same, and by the performance of other work on said road.

There surely, then, was a parol agreement between the parties purchasing the lands lying back of the Charles Kemple tract and the vendors that said way should be kept open. In pursuance of that agreement the road was opened; and Kemple, and those claiming under him, including Isaac Shepherd, the appellant, have quietly acquiesced in allowing said road to be kept open from the year 1855 until the 1st day of November, 1887.

In the case of *Ashley* v. *Ashley*, 4 Gray, 197, the court holds: "Evidence that the grantee, at the time of receiving a deed of land, agreed by parol that the grantor might continue to exercise a right of way over the land not reserved in the deed, is admissible for the purpose of showing that the grantor's subsequent possession of such easement for twenty years commenced under a claim of right."

In the case of *Arbuckle* v. *Ward*, 29 Vt. 44, the court holds: "Where no contract is shown, and the use came to the knowledge of the adverse party, or was so open and notorious that such knowledge would be presumed, the use will be presumed to have been under a claim of right, unless the contrary is shown;" and, further: "That the use originated in a permission will not prevent its becoming a right by prescription, if continued for fifteen years, if the permission was of a perpetual or unlimited character."

Washb. Easem. p. 137, § 31, says: "And, if there has been the use of an easement for twenty years, unexplained, it will be presumed to be under a claim of right, and adverse, and be sufficient to establish a title by prescription, and to authorize the presumption of a grant, unless contradicted or explained;" referring to *Miller* v. *Garlock,* 8 Barb. 153; *Williams* v. *Nelson,* 23 Pick. 141; *Ricard* v. *Williams,* 7 Wheat. 59; *Hammond* v. *Zehner,* 21 N. Y. 118; and numerous other authorities. On the same page Washburn says: "So, where it has been used for twenty years or more under a claim of right, although such right were originally gained by an oral grant, such a user would be sufficiently adverse to gain a prescription thereby."

In the case of *Stearns* v. *James,* 12 Allen, 582, the court holds: "The use of an easement under claim of right, by virtue of a parol contract, is adverse, and, if continued for twenty years, will create a right."

In *Garrett* v. *Jackson,* 20 Pa. St. 331, the court holds: "Where one uses a road whenever he chooses, over the land of another, without asking leave, and without objection, the use is adverse; and an adverse enjoyment uninterrupted for twenty one years gives an indisputable title to the enjoyment. Such enjoyment, without evidence as to how it began, is presumed to have been in pursuance of a grant; and the burden of showing the contrary lies on the owner of the land."

In the case of *Collins* v. *Prentice, supra,* the Court clearly announces the proposition that where an owner of two tracts sells and conveys them, to one of which there is no access except over the other, the right of way is incident to the grant.

In *Nichols* v. *Luce,* 24 Pick. 103, the court uses this language: "Necessity is only a circumstance resorted to for the purpose of showing the intention of the parties, and raising an implication of a grant, and the deed of the grantor as much creates the way of necessity as it does the way by grant. The only difference between the two is that one is granted in express words and the other only by implication."

It is, however, contended by counsel for the appellant that, even if the plaintiff is entitled to a right of way, as claimed

by him, the respondent has the right to place convenient gates thereon, if the same are necessary, for his reasonable enjoyment of the land; but it must be remembered that the right acquired in this case, if acquired at all, is to an open and unobstructed way. Such it was in the beginning, when the fences were built, and so it has been kept and maintained for thirty years. It was an open way when the appellant purchased his farm, in 1863; and taking it, as he did, impressed with the acts and concessions of Charles Kemple, and for years prior thereto, it is too late for said Shepherd to change the character of said way by placing three gates across it. The plaintiff is certainly entitled to enjoy the easement in the condition it was when he acquired it, and has been through the many years of acquiescence which has conferred it upon him.

The appellant, however, has not erected these gates on the way that has been used for so many years, and to which the plaintiff claims he is entitled, but has fenced that up entirely; has opened a new and different way, to which the plaintiff can assert none of the rights which he has acquired over the way that has been opened and unobstructed for so many years; and what the plaintiff complains of in his bill is that the only road he is entitled to, and has been for years, is fenced across, so as to render it impassable, and defendant is seeking to compel him to use another and different route, obstructed by three gates in a distance of about 300 yards. It is true that Washburn on Real Property (volume 2, p. 337) says: "As a general proposition, the owner of a servient estate, over which there is a private way, may maintain gates or bars across the way, provided it do not materially interfere with the use of it, or the way, by the terms of the grant, is to be kept open;" and the same doctrine may be found in Washburn on Easements, and many other authorities; and that such is the law must be conceded, whenever a party is entitled in a general way to a right of way over adjoining lands.

But this case presents some peculiar features, which, in my opinion, take it out of the general rule governing such cases. This way was located, and its boundaries defined, by a fence on each side, for a considerable distance, erected by the ven-

dors of Gardner and Kemple; and it is shown by the evidence of Alexander Kemple that his father, Charles Kemple, as the agent of Ott, Heiskell, and Flemming, assisted by Lemuel Gardner, the grantor of plaintiff, opened the road, and built the fences along the same, and that it had remained an open way ever since—making about thirty two years since it was opened; and since then the fence along said road has been extended towards the land of Rogerson by the defendant, Shepherd; and that Peter Criswell bought the land from Kemple, as the agent of Ott, Heiskell, and Flemming, east of said Gardner's land; and said Criswell states in his deposition that he purchased his land in 1855; that said road was located for the purpose of selling that land back in there, and for the use of the parties that bought it; and that when he bought his land from Charles Kemple he had his word that the road should be kept open; that Gardner purchased about the same time; and that he has known said road to be an open road for twenty five or thirty years.

In the case of *Reynolds* v. *Edwards*, Willes, 282, it is held as follows: "A., the owner of a close situate within a close belonging to B., had a prescriptive right of way through B.'s to his own. Twenty four years ago, B. stopped up the old way, and made a new way, which was used ever since; but lately B. stopped up the new way. In an action brought by B. against A. for going over the new way, it was holden that A. could not justify using this way as a way of necessity, but that he should either have gone the old way, and thrown down the inclosure, or brought an action against B. for stopping up the old way. The new way was only a way by sufferance, during the pleasure of both parties; and A., by stopping it up, determined his pleasure."

Wood, Nuis. § 164, says: "As has been previously stated, when a right of way has been acquired by grant, it must be used according to the terms of the grant; and when a right has been acquired by prescription the right will be commensurate with and measured by the use."

As I understand this law, if the way acquired by use, although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right ac-

quired will be restricted to the same extent; and if, on the other hand, the way be well defined and fenced, and used as an open and unobstructed way during the period necessary to confer the right, the party acquiring this right of way has the right to continue to use the same in its unobstructed condition, and the owner of the servient estate has no right to change said way to another and different locality over his land, and obstruct the new way with gates. In this case, however, it does not appear that the defendant has erected gates across the way which has been used as an open and unobstructed way for so many years, but he has opened a new and different way through his lands, to which the plaintiff can assert no right, and placed gates upon it, and has fenced up the old way, to which alone the plaintiff is entitled; and this, it seems to me, he had no right to do.

As to the question suggested in appellant's brief in regard to mandatory injunctions, we find that in Kerr on Injunctions (page 50) the author says: "The jurisdiction has been questioned, but its existence must be admitted as beyond all doubt. It must, however, be exercised with caution, and is strictly confined to cases where the remedy at law, is inadequate for the purposes of justice, and the restoring things to their former condition is the only remedy which will meet the requirements of the case." And the case under consideration is the one to which the remedy, as it seems to me, is peculiarily adapted.

Viewing, then, the case in the light of the facts which have been presented, and applying the law which I regard as applicable thereto, I am of opinion that there is no error in the decree complained of, and that the same must be affirmed.

Affirmed.