486 S.E.2d 330

Elvira CLAIN–STEFANELLI, Appellant,

v.

Hetty E. THOMPSON, Appellee.

No. 23389.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1997.

Decided May 9, 1997.

Loudoun L. Thompson, Thompson & Parsons, Romney, for Appellant.

Royce B. Saville, Royce B. Saville, L.C., Romney, for Appellee.

MAYNARD, Justice.

This is an appeal by Elvira Clain–Stefanelli from the September 14, 1995, Order of the Circuit Court of Hampshire County. The appellant agrees with the order insofar as it grants her a prescriptive right-of-way over the land of Hetty Thompson, the appellee. However, the appellant appeals the circuit court's finding that the right-of-way is eleven feet in width with an additional one and one-half foot overhang on each side of the right-of-way. The appellant also appeals the circuit court's finding that the appellee has a legal right to maintain a gate across the right-of-way. Finally, the appellant objects to the circuit court's finding that the appellant, and her heirs and assigns, are prohibited from using the right-of-way to serve any development or subdivision of the appellant's property. The appellee cross-assigns as error the circuit court's finding that the appellant has a prescriptive right-of-way.

After reviewing the questions raised by the appellant and the appellee, as well as the record and law relating to this case, this Court finds that the circuit court did not err insofar as it found that the appellant has a prescriptive right-of-way. This Court also finds that the circuit court did not err insofar as it found that the right-of-way has a width of eleven feet with a one and one-half foot overhang on each side. This Court finds, however, that the circuit court erred in holding that the appellee has a legal right to maintain a gate across the right-of-way.

This Court also finds that the circuit court erred in holding that the appellant, and her heirs and assigns, are prohibited from using the right-of-way to serve any additional residences that may result from the development or subdivision of the appellant's property. The judgment of the Circuit Court of Hampshire County is, therefore, affirmed in part and reversed in part.

The relevant facts are as follows. The appellant, Elvira Clain–Stefanelli, and her husband, Vladimir Clain–Stefanelli, now deceased, purchased three tracts of land located in Hampshire County, West Virginia, namely, a 75–acre tract acquired in 1970, a 5.06–acre tract acquired in 1974, and a 68.85–acre tract acquired by two deeds of conveyance in 1975 and 1976. These tracts of land are contiguous to a 72.80–acre tract of land owned by the appellee, Hetty Thompson. The sole access to the appellant's land from a public road is across the land of the appellee.

The record in this case indicates that for many years prior to 1993 a right-of-way across the appellee's property was used to provide access to the land owned by the appellant. Shortly after she acquired her tract in 1993, the appellee placed livestock in the field over which the right-of-way is located, installed a fence on her property along the public road, and erected a gate across the entrance of the right-of-way which provided access to the appellant's land.

As a consequence, the appellant instituted the underlying action in the Circuit Court of Hampshire County to enjoin the appellee from obstructing the right-of-way. In her petition, the appellant prayed not only for the issuance of an injunction, but also prayed that the circuit court declare and define her rights in conjunction with the use and extent of the right-of-way.

A trial was conducted in the case by the Circuit Court of Hampshire County sitting without a jury on December 30, 1994. During that trial, evidence was introduced indicating that a right-of-way had existed across the appellee's property for possibly as much as 100 years and that this right-of-way had provided access to the appellant's property. There was also evidence that the way was

open and visible at the time the appellee purchased her tract in 1993. Further, photo evidence was introduced which clearly showed that the way had a stone base across the appellee's property and that its existence and location were obvious and visible to anyone who inspected the property.

There was testimony that the appellant used her property as a summer home from the time of its purchase in 1970 until her husband's death in 1982, and she also allowed people to hunt and fish on the land. From 1982 until the institution of the underlying action an overseer managed the property, renting it out to various tenants. In 1991, the appellant leased the property to a hunting club. According to testimony, no one was prohibited from using the right-of-way until the appellee erected the gate in 1993.

Among witnesses who testified as to the extent of the right-of-way was Kenneth F. Snyder, a licensed land surveyor, who indicated that the right-of-way was 660 feet long and eleven feet wide. Another surveyor, Frank A. Whitacre, testified that he had determined the average width of the right-of-way to be 13.6 feet. Other witnesses approximated the width of the right-of-way to be twelve to fifteen feet.

All the evidence introduced at trial suggested that there had never been a gate across the way until the appellee installed the gate shortly after the purchase of her property in 1993, provoking the institution of the underlying action.

On the basis of this evidence, and after viewing the site of the right-of-way, the trial court found that the appellant does have a right-of-way across the appellee's property, that this right-of-way is eleven feet wide with a one and one-half foot overhang on each

side, and that the appellee is entitled to maintain a gate across the way. The court also found that the right-of-way shall not be used to serve any development or subdivision of the appellant's property.

"This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syllabus Point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). *In Interest of: Tiffany Marie S.,* this Court discussed when a finding is "clearly erroneous" by stating:

A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, in part, *In Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996). With this in mind, we review the circuit court's order and the issues at hand.

As previously indicated, the appellee asserts that the circuit court erred in granting the appellant a prescriptive right-of-way.[1] We disagree.

It is well-settled that:

The open, continuous and uninterrupted use of a road over the lands of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road

---

1. In her brief to this Court, the appellee also cross-assigns as error the fact that the circuit court dismissed her cross-claim against her grantor and surveyor upon whose representations and plat she relied when purchasing the property, and which, she asserts, failed to indicate that there was third party usage of the right-of-way at issue. She further contends that the circuit court erred by permitting the appellant to present additional testimony at the Reconsideration Hearing, at which time the circuit court permitted an additional one and one-half foot overhang on each side of the right-of-way.

While the appellee asserted these cross-assignments of error in her brief, she failed to elaborate, discuss, or cite any authority to support these assertions. In *State, Dept. Of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), we stated that "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted). We, therefore, decline to consider these cross-assignments of error.

a right by prescription to the continued use thereof. In the absence of any one or all of such requisites, the claimant of a private way does not acquire such way by prescription over the lands of another.

Syllabus Point 1, *Holland v. Flanagan*, 139 W.Va. 884, 81 S.E.2d 908 (1954). It is also well-settled that "[t]he burden of proving an easement rests on the party claiming such right and must be established by clear and convincing proof." Syllabus Point 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976).

■ In the present case, there was testimony at trial that the right-of-way has existed across the appellee's property for perhaps as much as 100 years and that it has provided access to the appellant's property. The appellee contends, however, that even if a prescriptive right-of-way exists, it can be defeated if the servient estate is purchased by a bona-fide purchaser with no notice of the claim of the right-of-way, and argues that the right-of-way was not open, visible, apparent, or under continuous use when she purchased her property.

[I]t is a well-established principle governing the purchase of servient tenements that an easement therein is extinguished unless the purchaser has either actual notice of the existence of the easement, or constructive notice from the recordation of the express grant or reservation creating it, or from the fact that its use and enjoyment is open and visible.... The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence ... The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use.

*Fanti v. Welsh*, 152 W.Va. 233, 239–240, 161 S.E.2d 501, 505 (1968) (Citations omitted). Therefore, when a servient estate is sold, a prescriptive right-of-way over that estate is extinguished unless the purchaser of the servient estate has either actual or constructive notice of its existence. Where the prescrip-

tive right-of-way is open and visible so that a reasonably careful inspection of the servient estate would disclose the existence of the right-of-way, the purchaser has constructive notice.

■ Ample evidence was presented at trial that the right-of-way was clearly open and visible in 1993 when the appellee purchased the property so as to put her on notice of its existence. Several witnesses testified that the existence of the right-of-way was obvious. Further, photo evidence was introduced which clearly shows a right-of-way across the appellee's property consisting of two tracks having a stone base. In light of this evidence, we conclude that the circuit court did not err in finding by clear and convincing evidence the existence of a right-of-way across the property of the appellee. Therefore, we now examine the issues raised herein by the appellant.

The first point with which the appellant takes issue in the present case is the circuit court's ruling that the right-of-way is eleven feet wide with a one and one-half foot overhang on each side.

■ This Court has rather consistently recognized that "[t]he character and purpose of an easement acquired by prescription are determined by the use made of it during the prescriptive period." Syllabus Point 3, *Burns v. Goff*, 164 W.Va. 301, 262 S.E.2d 772 (1980) (per curiam). In the present case the evidence is not entirely clear as to the exact width of the right-of-way in question at the time it was established, since the right-of-way was established possibly 100 years before the institution of the present action. As previously indicated, Frank A. Whitacre, a surveyor, testified that the right-of-way is 13.6 feet in width and another surveyor, Kenneth F. Snyder, testified that it is eleven feet in width. Three witnesses approximated the width of the right-of-way at 12 to 15 feet. Another witness testified that the right-of-way is approximately 12 feet wide. Given this testimony, this Court cannot conclude that the circuit court erred in holding that the right-of-way is 11 feet wide with a one and one-half foot overhang on each side. Clearly, the 11 foot width is supported by the testimony of surveyor Snyder and the finding

of the overhang on each side is reasonably within the parameters established by surveyor Whitacre and the estimations of the other witnesses.

The second issue raised by the appellant is that the circuit court erred in holding that the appellee may legally erect and maintain a gate across the right-of-way in question, and denying the appellant the right to install a cattle crossing in lieu of a gate.[2]

The appellant contends that the right-of-way at issue remained open and unobstructed for a period of over 100 years and, therefore, the appellant has a right to continue to use the right-of-way in its unobstructed condition. For the reasons set forth below, we agree with the appellant.

As previously indicated, the fundamental law on prescriptive rights-of-way in this state indicates that the character and purpose of a right-of-way acquired by prescription are determined by the use made of it during the prescriptive period. In determining whether the owner of the servient estate can erect a gate across a prescriptive right-of-way, this Court has historically looked at the facts of each case to ascertain the reasonableness of such action. In *Rogerson v. Shepherd,* 33 W.Va. 307, 317–318, 10 S.E. 632, 636 (1889), this Court stated:

> [I]f the way acquired by use, although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right acquired will be restricted to the same extent; and if, on the other hand, the way be well defined and fenced, and used as an open and unobstructed way during the period necessary to confer the right, the party acquiring this right of way has the right to continue to use the same in its unobstructed condition, and the owner of the servient estate has no right to change said way to another and different locality over his land, and obstruct the new way with gates.

The Court in *Rogerson* noted, however, that in holding that the owner of the servient estate could not obstruct the prescriptive right-of-way with gates, it was deviating from the general proposition that "the owner of a servient estate, over which there is a private way, may maintain gates or bars across the way, provided it do (*sic*) not materially interfere with the use of it." *Rogerson,* 33 W.Va. at 316, 10 S.E. at 636. The Court in *Rogerson* explained that the case presented some peculiar features which took it out of the general rule governing such cases. These peculiar features included the existence of a parol agreement between the parties' predecessors in title that the right-of-way would be kept open, and the fact that when the right-of-way was first opened, fences were constructed along both sides of it separating it from the servient estate. The Court also noted that the right-of-way had been unobstructed by gates for about 32 years. In *Mitchell v. Bowman,* 74 W.Va. 498, 82 S.E. 330 (1914), this Court distinguished *Rogerson* based on the peculiar facts noted above, and stated in Syllabus Point 2 that:

> A way of passage from a public road to a farm, over intervening agricultural lands, acquired by prescriptive use while the servient lands were unenclosed and unimproved, may be properly subjected to gates not unreasonably established and maintained, whenever the owners of the servient lands find it desirable to enclose the same for proper and ordinary use.

Considering the facts of this case in light of the general rule, we find that obstructing the right-of-way with a gate at this late date is simply unreasonable. As noted above, our inquiry on this issue is a fact-specific one. Among the factors that this Court considers in determining whether an owner of a servient estate may erect a gate across a prescriptive right-of-way are the history of the right-of-way and the history of the land it crosses. In the absence of an agreement to the contrary or other special circumstances, if the right-of-way has been in existence for a short period of time, and the servient estate has historically been unimproved or used as agricultural land, the owner of the servient estate may erect a gate

---

2. Because this Court reverses the circuit court's finding that the appellee may maintain a gate across the right-of-way, we do not find it necessary to discuss the matter of the cattle crossing.

across it for agricultural purposes. If, however, the right-of-way has been in existence for a lengthy time, and a gate has never been placed across it, the owner of the servient estate may not change the character of such a long established right-of-way by obstructing it with a gate. Here, there is evidence that the right-of-way, established in the early 1900's according to the uncontradicted testimony of one witness, was open until the appellee erected a gate across it in 1993. The character of the right-of-way over its approximate 90 to 100 year existence is that of an unobstructed, ungated right-of-way. Given this evidence, and the rule of law that the character and purpose of a right-of-way acquired by prescription are determined by the use made of it during the prescriptive period, we believe that the right-of-way cannot now be gated. Here, the free and unfettered use of the right-of-way over its long history is controlling.

We believe, therefore, that the circuit court erred in finding that the appellee is entitled to maintain a gate across the right-of-way in question in the present case, and we reverse the judgment of the Circuit Court of Hampshire County insofar as it permits the appellee to maintain a gate across the right-of-way.

The final issue raised by the appellant is whether the circuit court erred in finding that the appellant and her heirs, or assigns are prohibited from transferring the right to use the right-of-way to serve a residential development or subdivision of the appellant's property.

The appellant asserts that even though a right-of-way serving a development or subdivision may receive more frequent travel, as long as the use and character of the subdivision is not changed from that which existed during the prescriptive period, the right-of-way may be used to serve the development or subdivision. We agree.

As with the previous issues, we look here to the rule that the character and purpose of a right-of-way acquired by prescription are determined by the use made of it during the prescriptive period. This rule was articulated in *Burns* where a similar issue was presented. There, the owner of a tract of land

conveyed the western portion of the land to one party and the eastern portion of the land to another party. Over the years, the owners of the one dwelling located on the western portion acquired a prescriptive right-of-way over the eastern portion. A trailer was subsequently placed on the western portion, and the issue was whether the occupants of the trailer could use the prescriptive right-of-way used by the owners of the original dwelling. The appellants asserted that because the right-of-way served only one dwelling during the prescriptive period, its use could not be increased to serve an additional dwelling. This Court stated:

We find this argument to be without merit. The appellants fail to distinguish between the character or purpose of the use and the frequency of a use of the same character. During the prescriptive period, the driveway was used for ingress and egress to a residential dwelling for all those purposes for which a person would use a driveway to their home, e. g. personal access, access of service and delivery vehicles, and for the visitation of friends and relatives. The use of the driveway by the trailer's occupants was of the same character and for the same purpose, i.e., ingress and egress to a residential dwelling. Although the driveway may now receive more frequent travel of the same character, this is not controlling. It would be a different matter, as an example, if the driveway were now intended to be used for commercial purposes, as this would clearly indicate a change in the character of the use.

*Burns*, 164 W.Va. at 305, 262 S.E.2d at 775.

■ We find this reasoning to be applicable in the present case, and hold that where a change in the use of a right-of-way is not a change of its character or purpose but merely one of degree, such as a mere increase in frequency of use, the extent of and the right to use the right-of-way are not affected by such change. There is evidence that the appellant's property was used at various times as a residence, farm, and for recreational activities such as hunting and fishing, and the circuit court found that a right-of-way exists for these purposes. There is no

evidence that the appellant's property was ever used for commercial purposes.

■ We find, therefore, that the right-of-way at issue may be used for ingress and egress to additional residential dwellings on the appellant's property that may result from any development or subdivision, for such would be in keeping with the historical character and purpose of the right-of-way. This would merely result in an increased frequency of residential traffic over the right-of-way and not a change in its character or purpose. We emphasize, however, that the right-of-way may not be used to serve any commercial development of the appellant's property. Also, we are not declaring that the appellant has the right to develop or subdivide her property for any purpose, because the question of such a right includes many additional issues which exceed the scope of this Court's concern. We merely find that the right-of-way at issue may be used to serve additional residential traffic. We also note that the appellant and her heirs or assigns do not have the right to extend the right-of-way beyond its present width in order to accommodate any future increase in residential traffic.

We find, therefore, that the circuit court erred in holding that the appellant and her heirs or assigns cannot transfer the right to use the right-of-way to serve additional residential development or subdivision of the appellant's property for residential purposes. Accordingly, we reverse the circuit court's holding on this issue.

Based upon the foregoing, the judgment of the Circuit Court of Hampshire County is affirmed insofar as it relates to the finding of a prescriptive right-of-way across the property of the appellee. The judgment of the circuit court is also affirmed insofar as it found that the width of the right-of-way is eleven feet with a one and one-half foot overhang on each side. The judgment of the circuit court is reversed insofar as it allows the appellee to maintain a gate across the right-of-way. Finally, the judgment of the circuit court is reversed insofar as it prohibits the appellant, and her heirs and assigns, from transferring the right to use the right-of-way to serve additional residential development or subdivision of the appellant's property for purely residential purposes.

Affirmed in part and reversed in part.