# CHARLESTON.

## TALBOTT v. KING.

Submitted January 19, 1889.—Decided January 29, 1889.

1. NUISANCE—INJUNCTION—PUBLIC ROAD.
   An individual can not enjoin a public nuisance, such as the obstruction of a road, unless it works special and peculiar injury

to him, and that injury must not be trivial, or such as may be compensated in damages, but must be serious affecting the substance and value of the plaintiff's estate. The first point of syllabus in *Bridge Co.* v. *Summers*, 13 W. Va. 476, reaffirmed.   (p. 8.)

2. PUBLIC ROAD—USER—DEDICATION.

   Mere *user* of a road will not make it a public road, under section 31, c. 43, Code 1887. The *user* must be accompanied either by an order of the County Court recognizing it in some way as a road, or the road must be worked by a surveyor as such. Dedication by the land-owner, though accompanied by public *user*, will not make it a public road, unless the dedication be accepted either by the County Court in its order-book or by a surveyor's working it.   (p. 10.)

*J. Bassel* and *Dayton & Dayton* for appellant.

*S. V. Woods* for appellee.

BRANNON, JUDGE:

Robert R. Talbott presented to the judge of the Third Circuit his bill, stating that he resided in road precinct 5, in Barbour county, on what is known as the "Belington Road," a main thoroughfare for all that section of densely populated country between Valley river, at Belington, and the Staunton and Parkersburg turnpike, for a distance of many miles; that in said precinct is a public road called the "Davitt Road" running through lands of defendant, John King, Owen Davitt, and Timothy Caveny, from a point on said Belington road near the Talbott church to a point, where the same intersects a road known as the "River Road," and thence to its intersection with another road known as the "Roaring Creek Road;" that plaintiff had erected at great expense and keeps in constant operation at a farm near said Belington road a large and valuable steam saw and grist mill, the only mill accessible to a large number of people living along said Belington road and the only one for all the people living on the Davitt road; that very many of the patrons of plaintiff's mill have no other means of reaching it besides by the Davitt road, unless by a distant, circuitous and inconvenient route many miles out of their way; that near said mill are a store, post-office, school-house, cattle-scales and blacksmith-shop, which are inaccessible to many of said people except by said Davitt

road, in which store and scales plaintiff is part owner; and that, as many customers of said store are in the habit of making one trip to store, post-office and mill with the same conveyance, if they are deprived of said road for the purpose of reaching the store, post-office and church, they can not reach the mill and will not patronize plaintiff; and that King had fenced, obstructed and destroyed said road and refused to permit persons to pass over it to said mill and store, whereby their customers were turned away, their business and profits diminished, and irreparable damage done to the plaintiff; and praying an injunction to restrain King from obstructing the road, which was granted.

The defendant demurred and answered, and in his answer denied all the material allegations of the bill specifically. The answer states, that for some years, while the lands in its course were uncleared and before the establishment of other roads afterwards in the answer mentioned, some people in the Roaring creek country made a path through the woods near the line of the alleged Davitt road, which path was changed as the lands were cleared; that it was never established by law or otherwise, never worked by a surveyor and never by the public regarded as a public road, and was in places almost impassable; and that its establishment would ruin his farm. Said answer further alleges, that the County Court recognizing the fact, that said path was no public road, established a public road substantially parallel with and at some points not more than forty five rods distant from said path and entering said Belington road, whereby any customers could reach said mill by travelling less than three quarters of a mile further from the section, which the bill alleged would be inconvenienced, and whose custom would be lost by shutting said pathway. The answer denied all special damage to the mill.

No replication was made to this answer, but both parties took depositions of numerous witnesses. The cause was heard on bill, demurrer, answer and depositions, the injunction was perpetuated, and King appeals.

The first question to be decided is whether the plantiff can maintain his bill for a public nuisance. In *Bridge Co.* v. *Summers*, 13 W. Va. 484, GREEN, P., says: "A court of equity ought not to interfere by injunction to prevent a public

nuisance when the party asking its aid shows no private injury actually sustained or justly apprehended by him. The obstruction to a public highway, to justify the interposition of a court of equity, must be more than a mere public nuisance,—it must work a special injury to the plaintiff; and such injury must not be trivial, and such as may be fully compensated in an action at law. But if the right of the public to the use of a highway is clear, and a special injury is threatened by an obstruction of the highway, and this special injury is serious, reaching the very substance and value of the plaintiff's estate, and is permanent in character, a court of equity by an injunction ought to prevent such a nuisance."

This must be regarded a fair exposition of the law. We do not see that the plaintiff's case fills its measure. We can not here follow the voluminous evidence in detail. It seems that this road is of minor importance, by no means largely contributing to the support of the plaintiff's mill and store, and that by means of another established road known as the "Stalnaker Road," referred to in the answer and described in the proof, all the persons, except two or three, (perhaps we should say one,) can reach them by going 208 rods further over perhaps a better road, and those two or three may through their own lands have access thereto. The loss of custom from stopping this road must be very small and trivial, by no means serious, or reaching the substance or value of plaintiff's property, as it must do under the rule above laid down.

In the case cited from 13 W. Va. the road obstructed was the approach of a toll-bridge on one end, being of vital importance to it, and its obstruction would thus sap its life. Not so here. This road was not the only road leading to store and mill, indeed did not lead directly to the mill, but entered the Belington road at some distance from the mill, and only contributed to its business in a degree, and those travelling on it could with equal ease practically reach the Belington road by the Stalnaker road. Chief Justice GRAY in *Blackwell* v. *Railroad Co.*, 122 Mass. 1, says : "If a bridge is constructed across a navigable stream and arm of the sea, the direct injury is to the navigation, which is a public interest, and the fact, that the plaintiff alone navigates the river

2

and is owner of the only wharf above the bridge, being merely proof, that the consequential damage to him is greater in degree than to others, does not establish his right to maintain an action, as other riparian owners may suffer in the same way, whenever they use the stream." See, also, High, Inj. § 525.

Were it the law, that any one consequentially sustaining damage from obstruction of a road like others or even greater in degree than others may go into equity by injunction, a vast field of private litigation would be opened. To justify it, the injury must be special and peculiar to the plaintiff, and moreover serious and certainly depreciating the value and enjoyment of his estate. The highways are the common property of all and by our law are under the guard and care of the state. For their obstruction the law gives a remedy by indictment. The general rule of law is well settled, that individuals can not enforce a public right or redress a public injury by suits in their own names. *Brainard* v. *Railroad Co.*, 7 Cush. 510. Endless would be the litigation, were every individual allowed to do so upon his own impulse or for private ends. It is safer and more prudent to trust the vindication of the public right to the public prosecutors and grand juries, and courts' should rather limit than widen the jurisdiction to entertain private suits in such cases.

The second question in this cause is: Was the road in question a public highway? It was certainly originally a path cut out by Miles King in the forest for his convenience. Then a neighbor, Davitt, settling there extended it for his convenience, and other paths extending it were made, and it has been for many years, say twenty seven, used by all having occasion to pass over it. It was fenced off as the land was cleared. Miles King made fences along it; so did John King. It is very narrow, not rising to the height of an ordinary road; rather a path than a road; too narrow in places for a wagon; very steep, with rocks in places, difficult to pass. No order of the Barbour County Court either establishing or recognizing it is shown or suggested. The end of it in Randolph, if that could be certainly called a part of it, was by that County Court made a highway and worked by surveyors and then discontinued as too steep. It was never

worked by surveyors in Barbour county. Davitt, a surveyor, living on it, interested in its establishment, after this controversy arose, after King closed it, with his boy and a man named Coonts, to whom he allowed credit for one hour's work, did some work, but that work was in removing the fence, which King had erected across it, and a little tree which had fallen over it. A man named Caveny under Davitt worked a day, but this was after King closed it. Davitt was surveyor two years but did no work there the first year nor the second, except as stated. He says his predecessor, Surveyor Poling, did not work it, and was asked if one named Durrett worked it, but the record gives no answer to this question. He says he never worked it with the assembled road hands and never knew any other surveyor to do so. He was asked if he knew of any other road in his precinct that had not been worked for twenty five years or twenty six years by a surveyor and hands and answered that he did not. He had resided there thirty years, and had ample opportunity of knowing of such work, if any had been done. Two other surveyors—Poling, a surveyor when his deposition was taken and for a term before, and Durrett, a surveyor at two differnt times for two years each—say they did not work it; knew of no surveyor doing so; and, though asked to work it, they pointedly declined to do so, because they did not consider it a road and did not feel called on by law to work it. Thus this road was never worked by surveyors, and we have two surveyors declaring it not a public road and refusing to work it.

The plaintiff relies on section 31 of chapter 43 of Warth's Code, which provides that every road used and occupied as a public road shall be taken and deemed to be a public road in all courts and places, wherever the establishment thereof shall come in question. What is the meaning of this statute? In *Ball* v. *Cox*, 29 W. Va. 407 (1 S. E. Rep. 673) the court quoting the act of 1872–73, c. 194, § 31, that "every road worked as a public road under the direction of a surveyor of roads shall in all courts and places be deemed a public road," held, that every road worked as a public road under the direction of a surveyor of roads shall in all courts of this State be deemed a public road, although it may not appear, that

the same was formally established by an order of the County Court." The section as amended in 1881 leaves out the words, "worked as a public road under the direction of a surveyor of roads," and substitutes the words, "used and occupied as a public road."

We do not think this change of phraseology has changed the meaning. To be a public road under the act of 1881 it must be "used and occupied," both verbs being employed, and used and occupied as a public road. It must be not only used as a public road,—the people do that; their passage over it is transient,—but must be occupied as a public road; that is completely taken possession of for purposes of easement, shutting out other conflicting control, and occupied as a public road by public authority,—a function performed by the County Court or its agent, the public officer called the "surveyor." The occupation, to shut out the perfect use of the owner, must be either by order of the County Court or by the surveyor's working it as a road. It must have some stamp of public authority upon it beyond mere *user* by the public, and that is the being taken possession of and worked and held out by the surveyor to be a road, at least. To require the sanction of public authority to at least this extent is not hurtful to the public convenience and insures the public safety to an extent greater than would the construction, that mere naked use by the public in passing makes it a public road.

Our law requires all public roads to be worked at public expense and makes the county liable for damages for injuries arising from non-repairs; and if mere use by the public unsanctioned by order of the court or the surveyor makes the road a public road, grievous damages and burdens might fall upon the public; and such a rule would be so indefinite as to render it well nigh impossible to determine what were public and what were not public roads. It would endanger private property, taking land by mere *user*, and making it a road without compensation would endanger private property. But if we require the sanction of the court or the occupation of the road by the public officer by those visible open acts which manifest to the world its adoption by the public authority, the public liability for maintenance and

damages is tested by a reasonable rule and limit, and the owner of the land seeing the public officer working the roads knows of the public claim, and, if he acquiesces for any long time, will be held estopped from denying the validity of the road.

Kelley's case, 8 Gratt. 632, holds, that mere *user* of a road by the public for however long a time will not constitute it a public road, but it must be shown to have been established or by some action recognized by the County Court; and that a road may become a public road by dedication of a right of passage to the public by the owner of the soil and an acceptance by the public, but that dedication without acceptance will not establish a road; and that this acceptance must be by the County Court on its records, before it will be a public road. We think the law of Kelley's Case good now under our present road-act with the qualification, as provided by our act, that acceptance by the surveyor of roads evinced by open control and working of it, as roads are commonly worked, stands in lieu of an order by the County Court. Dedication, though accompanied by *user* by the public, not accepted by the court or the surveyor will not fasten it on the public as a public road. Mere *user* by the public, unless it be sanctioned by a recorded court order or by work and control by the surveyor, will not deprive the owner of the soil of his right and make it a public road; but such *user* by the public and work by the surveyor, if acquiesced in for a long time by the owner, will estop him from denying its existence.

Notwithstanding the change of phraseology in section 31 of chapter 43 of the Code, as amended by chapter 14, Acts 1881, from former acts, we still adhere to the first point of the syllabus in *Ball* v. *Cox*, 29 W. Va. 407 (1 S. E. Rep. 673) requiring, that to make a public road it must be worked by a surveyor. It is claimed that Miles King, grantor of John King, dedicated this road to public use. If he did, such dedication not having been accepted by the court or by surveyors working it, two surveyors having on the contrary refused to regard it a public road or to do work on it, the dedication alone would not make it a road; and, the question of dedication being one of mere fact, we do not deem it necessary to to decide it.

The decree of the Circuit Court of Barbour county in this cause must be reversed, the injunction dissolved, the bill dismissed, and the appellant recover from appellee his costs both in this Court and in the Circuit Court.

REVERSED. DISMISSED.

32 14
35 71

32 14
38 623

32 14
40 41

32 14
41 335
41 391

32 14
43 370
43 376
43 434

32 14
45 249

32 14
46 223
46 224
46 486

32 14
47 717

32 14
54 596

32 14
56 292

# CHARLESTON.