# CHARLESTON.

BOYD *et al.* v. WOOLWINE *et al.*

Submitted January 23, 1895—Decided March 30, 1895.

1. EASEMENT—PRIVATE RIGHT OF WAY.
   A private right of way is the right of going over another man's land, and may be acquired by grant, express or implied, or by prescription.

2. EASEMENT—WAY OF NECESSITY.
   When a man grants land to another in the middle of land retained, he impliedly gives the grantee a way to come at it, across the land retained. This is an instance of what is called a "way of necessity."

3. EASEMENT—PRIVATE RIGHT OF WAY—UNINTERRUPTED USE.

A private right of way by prescription may be acquired by a visible, continuous, uninterrupted use for twenty years under a *bona fide* claim of right.

4. EASEMENT—PASSWAY—CONTINUOUS USE—HIGHWAY.

The continuous and uninterrupted use of a passway for twenty years or more by the people generally, though with the knowledge and consent of the owner of the land, will not constitute it a county highway; it must be accepted or in some way recognized as such by the county court.

5. EASEMENT—INJUNCTION—PRIVATE WAY.

A mandatory injunction will lie to cause an obstructed or closed private way to be cleared and opened for the use of the owner.

A case in which these principles are applied.

J. J. SWOPE and JAS. II. MILLER for appellants, cited 33 W. Va. 307; 36 W. Va. 427; 37 Gratt. 892; 6 Law. R. R. & P. § 2776; Wash. Ease. § 31; 33 W. Va. 315; 29 Vt. 44; 19 Am. & Eng. Ency. Law, p. 9; Wash. Ease. p. 114; 23 Iowa 511; 57 Am. Dec. 297; Woolr. Ways 19, 188; 3 Kent. 442; Elliott's Roads and Streets 139; 2 Min. Inst. p. 558; 1 Lom. Dig. 783; 2 Min. Inst. p. 560; 74 Am. Dec. 629; 12 Id. 584; 44 Id. 41; 109 Ind. 586; 69 Wis. 613; 27 S. Car. 549; 13 Atl. Rep. 81; 13 Gray (Mass.) 188; 100 N. Y. 455; 3 Nev. 361; 93 Am. Dec. 409; 24 N. W. 440; 57 Am. Dec. 294; 3 McCord (S. C.) 194; 10 Hisk (Tenn.) 329; 77 Ill. 570; 54 Ga. 233; 2 Min. Inst. pp. 19, 20; 4 Rand. 58; 3 Leigh 318; 3 Kent 441; Code, W. Va., c. 104, s. 1; 11 Am. Dec. 661, 663; Wash. Ease. 66; 20 Am. Dec. 524, 525; 7 Id. 193, note; Godd. Ease. p. 134; 36 W. Va. 437; 18 W. Va. 454; 5 N. Y. 9; 13 Am. Dec. 741, 745; 19 Am. & Eng. Ency. Law, pp. 19, 20; 38 Am. Dec. 61; 77 Ill. 570; 64 Am. Dec. 76; 49 Id. 99; 126 Mass. 445; 1 Barb. Ch. (N. Y.) 353; Wash. Ease. 259; 13 Am. Dec. 741; 94 Id. 260; 38 Id. 61; 35 How. Pr. N. Y. 139; 126 Mass. 445; 22 N. Y. 217; 27 N. H. 448; 59 Am. Dec. 387; 7 C. & P. 761; 69 Cal. 199; 19 Am. & Eng. Ency. Law 97; 3 Taunt. 24; 85 Am. Dec. 671; 117 Ill. 643; 19 Am. & Eng. Ency. Law 106; 13 Am. Dec. 741; 42 Ind. 44; 5 Harr. (2d) 21; 1 Whar. Ev. § 264; 1 Green. Ev. § 113; 1 Whar. Ev. § 203; 1 Green. Ev. § 109; 2 Mun. 468.

THOMAS G. MANN for appellees, cited 6 Rob. Pr. 804; 3

Kent. 419 (top page); 8 Gratt. 632; 1 Lomax Dig. 524; 2 Min. Inst. 20.

HOLT, PRESIDENT:

This was a bill of injunction in the Circuit Court of Summers county to protect and enforce a private right of way.

On the 23d day of June, 1892, the injunction was granted the plaintiffs restraining the defendant Caroline Woolwine and the other defendants from obstructing the road in the bill mentioned, and requiring them to unlock the gates and remove all other obstructions placed in the road by defendants, and leave the same open and unobstructed until further order. All the defendants put in answers, the plaintiffs replied, depositions were taken, exhibits filed, and the cause coming on for final hearing on the 15th day of September, 1893, before a special judge, the injunction was dissolved, and the bill dismissed, with costs, and from this decree this appeal was allowed the plaintiffs.

The bill was demurred to. Does it make out a case for relief? The plaintiffs allege that they are the owners of valuable real estate on which they reside, situate in Talcott district, Summers county, on the waters of Eagle branch, a small stream flowing into Greenbrier river; that defendants are owners of a tract of land below on said branch;—this latter tract appears to have been conveyed by Augustus Gwinn and wife to defendant Caroline Woolwine and her children, by deed dated the 7th day of April, 1883, as containing twenty four acres, lying on Greenbrier river, and including the mouth of Eagle branch;—that when plaintiffs bought their land and commenced to reside upon it, twentyfour years ago, there was an open and notorious way running up said branch for persons to pass and repass from plaintiffs' lands, through the twenty four acres now belonging to defendants, to the public highway; that it has been open to such travel time out of mind. Plaintiffs also allege that they own an easement as a private right of way along said Eagle Branch road; that for twenty four years they have used and enjoyed the same continuously and without inter-

ruption, openly and visibly, and claiming the same as a private right of gate-way; that they have worked upon it and kept it in repair without objection or molestation on the part of the defendants, who had made two small changes in that part running through their own land, after having first asked for and obtained from plaintiffs permission to make them; that plaintiffs have no other way through their own premises to the public road; that this easement is the only way they own by which they can have access to the public highway to mill, to market and to church, and that there is a public school house on the branch called "Boyd's School House;" that they are informed that there was a parol agreement between defendants and the person from whom defendants bought their land that this way an easement was to remain open and unobstructed by defendants; that on the 1st day of June, 1892, defendants conspired together to injure and annoy plaintiffs by preventing their use of this pass-way, and to that end put trees and other obstructions across the same, closed and locked the gates and refused to open them, or to permit plaintiffs to pass through, though they were often requested to do so—by all which plaintiffs are greatly damaged and annoyed. Plaintiffs prayed for the injunction already mentioned as temporarily granted, and for general relief.

Such is the substance of the bill, with the order in which the facts are set forth slightly changed. Some defects are obvious, such as the allegation made on information, which plaintiffs, perhaps, did not believe to be true. The plaintiffs, however, could to advantage have made the location and title of their own lands more definite and explicit, but I shall take for granted that some of these facts sufficiently set forth make out a *prima facie* case, two circuit judges having so held, and nothing to the contrary being claimed in defendants' brief.

*First.* As to the public right of way.

I can scarcely think of anything a private right of way would be likely to embrace beyond the public one while the latter lasted; yet it is easy to see that the two are not nec-

essarily inconsistent, and that the former may be coexistent with the latter, and so it has been held. *Brownlow* v. *Tomlinson*, 1 Man. & G. 184. The proof shows that this road has been used as a way continuously by the public, in the sense of being traveled by any and all who saw fit to pass over it, for sixty years or more, going back to a time when all these lands were in a state of nature, uncleared and unfenced. When the tract of twenty four acres was first fenced and gates put across the road does not appear, but it does appear that it was not done for the purpose, and did not have the effect, of putting a stop to its use; but the erection of the gates without leave of the county court, tends to show that it was not, or at least was not regarded as a county road. It does not appear that it was ever a thoroughfare. It is now, and has long been, only a *cul de sac* a mile or so long, opening out into the highway after passing through the land of defendants. Augustus Gwinn became the owner of the land in 1858, and this was a public pass-way then, and has been ever since. He sold to plaintiff Taylor and his father where the former now resides, and it was the agreement that plaintiff was to have the right to use this road as an outlet to the public road, but there was no evidence in writing of such agreement or of such sale. Gwinn afterwards sold and conveyed the twenty four acres to defendants, who knew of this public pass-way, and agreed to leave it open, but there was no reservation thereof in the deed, or any contract to that effect in writing. This, together with such long user, is the evidence of dedication to the public of this right of way. No acceptance thereof by the County Court appears, and it must be taken that none was ever made, as the County Court speaks only by record. It has long been the settled law in this state that the mere user of a road by the public, for however long a time, will not make it a public road. On the contrary, the mere permission by the owner of the land to the public to pass over the road is, without more, to be regarded as a license revocable at his pleasure. A road dedicated to the public must in some way, directly or by inference, be accepted by the County Court upon its records before it can become a public county road. This may be done

by laying it off into precincts or road districts, by appointing for it an overseer or surveyor, or by any act, formal or informal, showing plainly that it claims and treats the road as a public one. And if, after notice of such claim, the owner of the soil permitted the road to be passed over for any time, the road might well be inferred to be a public road. See *Brander* v. *Justices of Chesterfield*, 5 Call. 548; *Clarke* v. *Mayo*, 4 Call 374; *Com.* v. *Kelly* (1851) 8 Gratt. 632; *Ball* v. *Cox*, 29 W. Va. 407 (1 S. E. Rep. 673). It is true that section 31, chapter 43, of the Code, by change of language made in 1881, now reads as follows: "Every road * * * used and occupied as a public road * * * shall in all courts and places be taken and deemed to be a public road * * * whenever the establishment thereof as such may come in question;" yet the Court has held that this means used and occupied under the sanction of the county court in some way expressed. See *Ball* v. *Cox*, 29 W. Va. 407 (1 S. E. Rep. 673); *Talbott* v. *King*, 32 W. Va. 6 (9 S. E. Rep. 48); *Yates* v. *Town of West Grafton*, 33 W. Va. 507 (11 S. E. Rep. 8); *People* v. *Underhill*, 114 N. Y. 316 (39 N. E. Rep. 333). This doctrine and this construction of this statute find their reason and justification in the following facts: In this country new and sparsely settled as it is, pass-ways run here and there used more or less during more than a lifetime of one generation with the silent permission of the owners of the land, but without the faintest intent on their part to dedicate, or thought that they were thereby dedicating, a right of way to the public. In contemplation of our law of county police and economy, there can be no county road which is not in some way committed to the care and supervision of some road surveyor, whose duty it is to see that it is kept open and free from obstruction. Is the county court to be held liable in damages to any person who has sustained an injury in person or property by reason of a road being out of repair, which it has never in any way accepted or recognized as a public county road, or caused to be occupied as such by its road officers. See section 53, chapter 43, of the Code. But the question remains, have the plaintiffs shown themselves to have a private right

of way. This is quite a different thing, not only in its nature and extent, but in the methods of its creation and the evidence of its existence. It falls under the head of an easement, an incorporeal right, is of many varieties and with various characteristics, according to its own peculiar facts, which need not be noticed here or discussed further than they are brought into question by this record.

*Second.* It is claimed that plaintiffs have a right of way through defendants' land of necessity.

A way of necessity arises as an incident to a grant of land surrounded wholly by that of the grantor, when otherwise the land granted would not be accessible and the grantee would derive no benefit from the grant. It is an instance of the maxim that one is always understood to intend, as an incident, to grant whatever is necessary to give effect thereto, which is in the grantor's power to bestow. 2 Minor's Inst. 20; *Rogerson* v. *Shepherd*, 33 W. Va. 307 (10 S. E. Rep. 632); *Nichols* v. *Luce*, (1834) 24 Pick. 102; 6 Rob. Prac. 804. But these plaintiffs do not allege in their bill that they acquired their lands by purchase or conveyance from Augustus Gwinn or from any other person, but simply say that they are the owners of the land on which they reside, without alleging when, how, or from whom they acquired title thereto. By their evidence they make out a very clear case of inaccessibility into their homes, and out to the mill, market, church and courthouse and highway, without using the road in controversy; such a case of necessity as the county court would not hesitate to relieve them from by making it a public road if addressed to that body (*Lewis* v. *Washington*, 5 Gratt. 265) but they produce no competent proof here that they have any title at all to their lands except their actual possession, which makes them *prima facie* owners in fee, sufficient, perhaps, for the purpose of this case in other aspects, but certainly giving us no clue as to how or why they own this way as a way of necessity. They also claim title to this way by prescription. This right is fully set forth in their bill and clearly made out by the proof. Augustus Gwinn, while he was still the owner of the twenty four acres at the mouth of Eagle branch, agreed verbally that plaintiff Taylor and

the others living on the branch should have the use of the road in dispute as an outlet to the public road. *Trueheart* v. *Price* (1811) 2 Mun. 468; *McKenzie* v. *Elliott* (Ill., 1890) 24 N. E. Rep. 965. Under this claim of right, and thus claiming it as their own, they have visibly and continuously used and enjoyed this pass-way without interruption for more than twenty years, working it and keeping it in some sort of repair during all that period, with the help of some of the defendants who resided on it where it runs through their own land. By such adversary user for that period of time they acquired a right to the unobstructed use of said way. *Rogerson* v. *Shepherd*, 33 W. Va. 307 (10 S. E. Rep. 632); *Stokes* v. *Upper Appomatox Co.* (1831) 3 Leigh 318; *Coulter* v. *Hunter* (1826) 4 Rand. 58.

If such is the right of the plaintiff, no question is made that this is their proper remedy; in fact, their only plain, adequate and complete remedy, seeing that it is the unobstructed use of the road they are after, and not damages for the obstruction of it.

Therefore the decree of September 15, 1893, complained of, must be set aside, and the temporary injunction awarded on the 23d day of July, 1892, be made perpetual.