# CHARLESTON.

## DICKEN *v.* LIVERPOOL SALT & COAL CO.

Submitted September 12, 1895—Decided Dec. 7, 1895.

1. NEGLIGENCE.

   Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person.

2. PUBLIC ROADS—PUBLIC USER.

   The mere use of a road by the public, for however long a time, will not make it a public road. On the contrary, the mere permission by the owner of the land to the public to pass over the road is, without more, to be regarded as a license, revocable at pleasure.

3. PUBLIC ROADS—DEDICATION—COUNTY COURT.

   If intended to be dedicated to the public by the owner of the land, it must in some way, directly or by inference, be accepted by the county court or municipal corporation upon its record before it can become a public road.

4. NEGLIGENCE.

   A party who is using his own property in a lawful way can not be guilty of a breach of duty to any one.

5. Negligence—Parent—Infant.

The negligence of a parent can not be imputed to the infant child, too young to know how to take care of itself; nor can such child be guilty of contributory negligence.

6. Instructions—Material Allegations.

It is not proper, in a suit for negligence to instruct a jury that, if they believe from the evidence that the plaintiff has proved the material allegations of his declaration; they should find for the plaintiff. What is a material allegation is a question of law for the court.

A case in which these principles are applied.

J. B. Menager, H. R. Howard, and Brown, Jackson & Knight for plaintiff in error, cited 36 W. Va. 329; 38 W. Va. 668; 62 N. H. 579; 90 Mo. 294; 83 Va. 355; 53 Conn. 474; 23 Kan. 358; 20 L. R. A. 714; Code of W. Va. (1891) page 828; 144 U. S. 408.

W. R. Gunn, L. C. Somerville, and Chas. E. Hogg for defendant in error, on the following points (among others) cited:
I.—*This road on defendant's premises was open and uninclosed, as shown by the evidence, where children could easily go, and was in general use by the public, and the plaintiff was on this road, or on the very edge of it at the time he was injured, and was in such a situation toward the defendant, its property and salt car, running over said tram road as to make it the duty of said defendant to exercise ordinary care for the safety of the said plaintiff, the omission to observe which toward him constitutes negligence on the part of the defendant.*—96 Ind. 361; 83 Pa. St. 332; Beach Con. Neg. 178, note 4; 22 Kan. 686; 15 Abb. Pr. (N. S.) 319; 19 Conn. 507; 1 Head (Tenn.) 610; 112 Pa. St. 437; 13 L. J. 118; 57 Me. 118; 39 Am. & Eng. R. Cas. (Tex.) 604; 14 Am. & Eng. R. Cas. 381; 10 Allen, 368; 33 Wis. 67; 32 N. J. L. 91; 12 Bush, 41; 60 Mo. 475; 57 Me. 117; 56 Pa. St. 280; 56 Ill. 344; 69 Ill. 174; 65 Pa. St. 269.

II.—*It was the duty of the defendant to so conduct its business in the manner of operating and running its cars and in managing the mule thereto attached, as to avoid the negligent injury of the child (the plaintiff) in the situation in which it was discovered by the defendant's agent.*—2 Shear. & Redf. Neg. § 645 and note; 6 Am. R. R. & Corp. Rep. 130–40; 9 L. Rep. Annotated 313.

III.—*The demurrer to the declaration was properly overruled.* 9 W. Va. 262; 15 W. Va. 365; 27 W. Va. 288; 27 W. Va. 571; 38 W. Va. 645.

IV.—*The non-residence of the witness appearing in his deposition is sufficient to authorize it to be read.*—2 Gratt. 216 ; 26 Ga. 292; 21 Neb. 357; 10 W. Va. 677; Weeks on the Law of Depositions, p. 520; 3 Ala. 237; 20 Me. 257; 35 Vt. 291.

V.—*It is not necessary for the officer taking a deposition to suffix after his name appended thereto his official character.*— Code, c. 51, s. 2; Weeks on the Law of Depositions, § 187; 6 Wend. 543; 6 Cow. 728; 143 Mass. 380; 9 S. E. Rep. 740; 9 Baxt. 581; 34 Iowa, 81.

VI.—*It must affirmatively appear that the court below has committed error, else the judgment will be affirmed.*—16 W. Va. 687.

VII.—*A municipality may regulate by ordinance the speed of trains within its corporate limits.*—8 Am. R. R. & Corp. Rep. 352; 81 Pa. St. 194; 31 Minn. 402; 4 West. 592.

VIII.—*The right to regulate the speed of animals and vehicles by ordinance is referable to the police power vested in the municipality.*—108 Mo. 439; 98 Mo. 330; 31 Minn. 402; 81 Pa. St. 194; 53 N. J. Law, 132.

IX.—*Contributory negligence is not imputable to a child of tender years incapable of caring for itself.*—27 Gratt. 455; 38 Neb. 91; 114 N. C. 699; 2 West. 200; 64 Miss. 777; 39 Minn. 164; 20 N. E. Rep. 466; 66 Miss. 560; 4 Am. R. R. & Corp. Rep. 672; 118 Ill. 572; 49 Mo. App. 648; 6 L. R. A. 536 and note.

X.—*The Negligence of a parent or him in loco parentis is not imputable to a child.*—13 S. E. Rep. 454; 22 Vt. 214; 17 W. Va. 202; Sherman & Redfield Neg. 48a; 57 Pa. St. 172; 16 Neb. 169; Beach Con. Neg. § 42; 27 Gratt. 455; 18 O. St. 408; 59 Tex. 64; 113 Pa. St. 412; 22 Vt. 214; 92 Pa. St. 450; 83 Ala. 371; 78 Iowa 396; 17 Wall. 657; 4 Am. & Eng. Enc. Law, 88; 52 N. J. Law, 446; 21 L. R. A. 76 and note; Bishop on Non-contract Law, § 352; 1 Sher. & Red. Neg. § 57; Whar. Neg. § 321; 2 Wood R'y Law, 1284; Beach Con. Neg. § 130; 2 Mackey

(D. C.) 437; 43 La. Ann. 63; 64 Mich. 494; 85 Mich. 280; 37 W. Va. 421; 108 Ind. 630; 109 Ind. 179.

Holt, President:

On writ of error to a judgment of the Circuit Court of Mason county, rendered on the 30th day of November, 1893, for eighteen hundred dollars damages for injury done to the infant plaintiff.

Plaintiff, suing by his next friend in trespass on the case, in his declaration and his amended declaration containing three counts averred in substance that the defendant, a corporation existing and doing business in this state under and by virtue of the laws thereof, was on the 30th day of May, 1892, the owner and operator of a certain horse tramway and carriages in the town of Hartford, Mason county, W. Va., leading from its salt house to its salt shed on the bank of the Ohio river, running along, over, near by, and across certain streets, roads, and public places in the said incorporated town of Hartford; that on said day the plaintiff, who was two years and ten months old, and unable to care for itself, was on and near the tramway, not far from defendant's salt house, and while plaintiff was thus on and near the tramway the defendant, by its servants and agents so negligently and carelessly used, managed and ran its carriages on the tramway that by reason of the carelessness of the driver of the mule and carriage on and along the tramway, and of the insufficient and improper tackle attached to the mule, and the want of time to stop and check the mule, the said mule and carriage ran upon and over the plaintiff, and thereby so wounded and maimed the plaintiff that it became necessary to amputate the right leg of plaintiff, which was done accordingly, whereby plaintiff has become permanently disabled, has been compelled to pay out and expend five hundred dollars in money, and has sustained damages to the amount of ten thousand dollars, and therefore he brings suit, etc. The second count averred in addition, that the mule was driven at a greater rate of speed than was permitted by the ordinances and municipal regulations of said town, and by a servant who failed and neglected to keep the proper outlook so as to avoid injury

to those who, being infants, were not able to take care of themselves. The third count adds that the plaintiff, when injured, was on the premises of defendant near the public highway, *etc.* The defendant demurred to the declaration and to each count, but the court overruled the same, and I think properly. Thereupon the defendant pleaded not guilty.

Negligence is the violation of the duty of taking care— such care as the circumstances impose. "There is no absolute or intrinsic negligence. It is always relative to some circumstance of time, place, manner, or person." *Degg* v. *Railway Co.*, 1 Hurl. & N. 773, 781; 1 Bev. Neg. 11; *Railway Co.* v. *Ives*, 144 U. S. 408 (12 Sup. Ct. 679). What, then, are the facts of this case which are supposed to impose on the defendant the duty of taking care which they have neglected? It is the owner of a salt furnace and tract of land situated on the Ohio river, in the county of Mason, and town of Hartford; and this furnace has been in operation for some twenty-odd years. It has a horse tramway leading in part through its land from the furnace to the salt house and from the salt house a certain distance through its land, thence out and across a street and into a salt shed at a landing on the bank of the Ohio river. This tramway is as old as the furnace. It is indispensable to the running of the furnace, to carry to it coal, to carry ashes and cinders away, to carry salt to the depot, to the landing at the river, *etc.* The business could not be carried on without it. It has not found it at all convenient to keep it closed where it enters into its property, but sometimes has practically closed it with its bromine works for a short time. That it has not seen fit or found it necessary to object to people generally coming and going upon it for a period of twenty years is no more a dedication of it to the public, according to the facts of this record, than it is a dedication to the public of its salt property, to and from and through which people are constantly coming and going. Both are of private ownership; the one where it runs through the land in question quite as much as the other.

On the 30th day of May, 1895, the defandant, by its driver, was hauling salt from its salt house to its salt shed

at the landing on the Ohio river.   As the driver returned from the river along the tramway with the mule in a trot, and crossed a public street, and entered the grounds of defendant, he was warned by a gentleman in a store he passed that there was a small child ahead on the track, which, up to that moment was out of sight.   Instantly he applied the brake to the salt car, and halloed "Whoa!" to the mule, but the mule did not stop.   Sixty feet would bring him to the child, which, in attempting to climb up a three-foot cut off the track had slipped back.   He sprang out, and grabbed the child, perhaps saving its life, but not its right leg, which was broken by the front wheel.   He did all that it was possible for him to do to ascertain the danger of the child and prevent its injury.

As we have said above, this was clearly a private way, and in this state a private way can not be converted into a public highway by the use thereof by the public, no matter how long that use may be continued; but it must be dedicated by the owner and accepted for the public by the county court, which acceptance can only be shown by its record.   "It has long been the settled law in this state that the mere user of a road by the public for however long a time will not make it a public road.   On the contrary, the mere permission by the owner of the land to the public to pass over the road is, without more, to be regarded as a license revocable at pleasure.   A road dedicated to the public must in some way, directly or by inference, be accepted by the county court upon its record, or by the municipal corporation, before it can become a public road."   *Boyd* v. *Woolwine*, 40 W. Va. 282 (21 S. E. 1020); *Com.* v. *Kelly*, 8 Gratt. 632; *Hall* v. *McLeod*, 2 Metc. (Ky.) 98; *Davis* v. *Ramsey*, 5 Jones (N. C.) 236; *Speir* v. *Town of Utrecht*, 121 N. Y. 420 (24 N. E. 692); 19 Am. & Eng. Enc. Law, 107.

1.   The owner must in some way indicate an intention to appropriate the private way to the public use.   See Elliott, Roads & S. p. 92.   Here there was nothing of that sort. It was the ordinary private way, along the side of which ran the private tram road indispensable to a salt-furnace property.

2.   Even if intended to be dedicated, it has never been

accepted. You can not bind the public or the county without its assent, and in this state such assent must appear directly or indirectly by the record. It can speak in no other way. See Elliott, Roads & S. p. 87. Therefore this accident occurred on the private property of defendant; on its tramway, near the salt house. There was no allurement or enticement of any kind calculated to draw children to that place. They were not in the habit of going there. None had ever been seen there before; none by this driver, as he testifies. Therefore there was nothing to lead defendant to anticipate any such danger, and to provide in any way against it. But the driver gives it as his opinion that, if he had had lines on the mule—for he was driving without any—he could have thrown the salt car off the track, and thus prevented the accident. But defendant was on its own land. There was nothing to draw children to the place. They were not in the habit of going there. It endangered no one at that distance from the public highway. It had on a new and sufficient brake. What was there in the case to require the defendant to anticipate and provide against the escape of some young child from its home, and its wandering at random upon its premises? It sounds like a strange legal proposition that the owners of a salt furnace running a private salt car provided with a sufficient brake, on a tramway on its own land, must, on pain of being held guilty of negligence, not only anticipate such an emergency, but, in order to meet it, provide beforehand a method of throwing the car off the track; for the car could not be stopped otherwise than by the brake if kept on the track.

Much has been said about the duty of outlook. Railways of all kinds—horse, steam, and electric—have found by experience that to keep their appliances in good order, and their tracks safe and clear, requires unrelenting watchfulness. How far passengers, employes, and the outside public may insist upon watchfulness on the part of these public carriers does not arise in this case. It is enough to say that the former must regulate their conduct on the assumption that they may be brought in contact with children as well as with adults. In this case, whether it was

the defendant's duty or not, under the circumstances, to keep watch or outlook, the evidence shows that it was done.

Again, it is said that the driving was too fast, and in violation of an ordinance of the town of July 8, 1875, which made it unlawful for any person to ride or drive a horse or mule faster than a slow trot within the town. By fair construction, this ordinance could only be held to apply to fast riding or driving in public places. This is shown by the subsequent ordinance of August 14, 1877, which evidently was intended to supersede and make definite the ordinance of 1875. The one of 1877 provides that it shall be unlawful for any person to ride or drive through the streets of the town at a faster gait or speed than six miles an hour. This tramway crosses two streets. When the driver came to the street, the mule was in a trot, but no one undertakes to say that it was going faster than six miles an hour; but it was going pretty fast when it struck the child, which would not have been hurt if it had not slid back from the bank of the cut on to the track of the tramway.

In my examination of this record, I think it is made plainly manifest that this unfortunate affair was what is termed in law, with reference to liability for negligence, an unavoidable accident, the result of chance practically inevitable; such as no foresight could be reasonably required to anticipate, and no prudence or diligence provide against; and therefore, under the circumstances, and on its own land, not a case of negligence on the part of defendant, but the result of a lawful act, done with due care, and one in which the court could properly have directed the jury to return a verdict for the defendant.

With this view of the case it is not necessary to discuss the numerous instructions given and refused except in a very general way. (1) I do not think the negligence of the parent can be imputed to this child, two years and ten months old, or that (2) it can be guilty of contributory negligence. (3) The municipal authority had the right to regulate the speed of riding and driving through or across the streets. (4) The amended declaration contains three

counts and covers six printed pages, and I do not think it was proper to instruct the jury that, if they believed from the evidence that the plaintiff had proved the material allegations of his declaration as therein set forth in this case then they should find for plaintiff. It is not proper to leave to the jury to determine what are the material facts of the declaration, for that is a question of law. Moreover, it could give them no help in such a case, but would tend to confuse, rather than to enlighten them on their duties in the premises.

For the reasons given, the judgment complained of must be reversed, the verdict set aside, and a new trial be awarded.

# CHARLESTON.

Submitted September 12, 1895.—Decided Dec. 7, 1895.