# CHARLESTON

### BENT v. TRIMBOLI.

Submitted January 15, 1907.    Decided March 12, 1907.

1. EVIDENCE - *Contract— Construction.*
   Letters and plats present and preferred to at the time of a contract may be admitted in evidence, not to contradict the terms of a written contract, but to explain any ambiguity therein. (p. 510.)

2. HIGHWAYS—*Private Roads—Obstruction—Injunction.*
   Equity will interfere by injunction, at the suit of a private individual, to restrain others from obstruction of public or private roads, where the obstruction will work a special and peculiar injury to him. (p. 512.)

Appeal from Circuit Court, Randolph County.

Bill by James A. Bent against Vincenzo Trimboli and others. Decree for defendants and plaintiff appeals.

*Reversed.*

FRED O. BLUE and JAMES A. BENT, for appellant.

C. H. SCOTT, for appellee.

MILLER, JUDGE:

The appellant Bent, a resident of Elkins, West Virginia, by deed of October 11, 1902, from Mary E. Shoemaker and others, acquired title to two acres of land more or less,

abutting upon the north side of the Seneca road, so-called, near the city of Elkins; and by deed of November 1, 1902, from Lewis Woolwine and wife, he acquired title to three and a fraction acres back of the first tract, but intersected by a sharp triangular piece of ground owned by one P. Clarence Barnes, of Cumberland, Md., the sharp angle pointing westward between these two tracts. Shortly after acquiring these two tracts of land, Bent corresponded with Barnes on the subject of a roadway through his triangular tract, so as to obtain access to his Woolwine land, and on December 27, 1902, wrote Barnes, referring to previous correspondence, and the substance of that letter applicable here is: "You will recollect I enclosed map showing the location of the strip of land I wanted to buy, the lands owned by me, and that I wanted to make a new road to get to my Woolwine land, and incidentally to accommodate you with an outlet. It would seem that the land I speak of is practically of no use to you, and I am willing to give you $50 per acre for what I want, and at the same time give you a road from your land out to Seneca road, along or near the stream. * * * The fact is, myself and grantors have had possession and under fence for about 15 years about half of the wedge shaped piece of land, and a road through it, but it is too steep, and I want to make a road from the Seneca road along the east side of my Shoemaker land, through the neck of your land to my Woolwine land, which is practically the only outlet for you, and much more convenient to me, and I suppose of course the court would open such road at the instance of either of us, but that is one reason we might agree to some such arrangement between ourselves and save that trouble; and so I would like to buy of you the strip lying along the east end of my Shoemaker land, which, guessing at the area, contains in the neighborhood of from 15 to 20 square rods, and in connection with the purchase arrange to build a road up near the little stream, through the land, and thus give us both a good outlet to the Seneca road."

On March 26, 1903, Bent was in Cumberland and he and Barnes entered into the following agreement: "It is agreed by and between P. Clarence Barnes, of Allegheny county, Maryland, and James A. Bent, of Elkins, West Vir-

ginia, that in consideration of the said James A. Bent making a good substantial public road between his land and the Seneca road, through the lands of the said P. Clarence Barnes, near the stream, that the said P. Clarence Barnes hereby agrees to convey to the said Bent the triangular piece of land lying on the west end of his land, seven rods long and five rods wide where it adjoins said road to be constructed; the same containing about seventeen square rods; the said James A. Bent agreeing that the said road shall be constructed within one month from the date hereof, and that it shall at all times be open to the said P. Clarence Barnes and the public generally."

Soon after making this agreement (the record does not show the exact time), Bent says: "I made the road, just as I had agreed, and understood I had agreed to by said contract, along near the stream,..........and fenced off the strip of land which said Barnes had in said contract between us agreed to convey to me, by a fence along the east end of it and immediately west of said road." Bent claims that after building this road Barnes was in Elkins, and that he personally ordered a conveyance for Barnes to drive out to his land, at which time Barnes wanted to sell him the remainder of his tract, and Bent then went over with Barnes the same matter, with the plat just as he had done before, pointing out the location of the road as he had made it, the stream and the lot he would be willing to buy east of the road he had made out to the east line of his Woolwine land, but that Barnes refused to sell unless he could sell the whole tract.

On June 22, 1903, Barnes and wife conveyed his tract of land to the defendant Vincenzo Trimboli, and the deed recites consideration of $500 cash, describing the land by metes and bounds (according to the original description) as containing 6 acres and 2 1-2 poles more or less, but with this saving clause: "Save and excepting therefrom a narrow strip triangle in form on the western end of said land, which by agreement between James A. Bent and the grantors hereof executed in March, 1903, was granted for a public road to be at all times open to the proprietor of this land and the public generally." The record shows that before Trimboli acquired the Barnes tract he had been

on the land, and had seen where the road was located and that Bent had the triangular piece lying west of the road enclosed by fence. After Trimboli bought his land he tried to purchase from Bent the triangular piece enclosed by Bent west of the road, and built a house upon his land near the road built by Bent, and used this road to convey to its location the material for the house, and it was used by him continuously thereafter as his only means of ingress and egress to and from his land, and also by Bent, his tenants and others, as a public way, without any controversy about the location or character of the road until about December 1, 1903, when it seems Trimboli fell out with some neighbor tenants of Bent and fellow-countrymen of his who traveled over this road to some water wells on Bent's lands near Trimboli's house to get water. Upon his cross-examination, after being referred to the facts just recited, he was asked: "Why then did you block up the Bent road by what you call a gate?" to which he answered: "To close up the road, because there was somebody there I did not like. Q. You had a lock on the gate? A. Yes." His testimony shows that he was referring to a Motto family as the "somebody" he did not like; and he admits that, after the injunction was awarded in this case, he threw the Bent road full of brush and in that part of it which extended through the Bent land.

It was to redress and prevent this wrong and injury that Bent filed the present bill against Vincenzo Trimboli, Gaspero, Francesco and Joseph Trimboli, doing business in the name and style of Vincenzo Trimboli & Company. Trimboli & Company were made parties to the suit because it appeared that Vincenzo Trimboli had, by deed of July 27, 1903, undertaken to convey the Barnes land to Vincenzo Trimboli & Company. The deed seems to have been acknowledged and recorded. The defendants aside from Vincenzo Trimboli answered that, prior to the making of this deed, negotiations for the purchase of the land had been pending between the parties but were never consummated, and that they had no interest in the land conveyed by the deed, and had never been guilty of barricading or obstructing the right of way claimed by Bent. No deed was ever made by Barnes to Bent for the triangular tract

which Barnes agreed by the contract to convey to Bent in consideration for his building the road; but the record shows that demands had been made by Bent upon Barnes for such deed, but the deed has never been made. The bill does not make Barnes a party to the suit, and it is not filed for a specific execution of the contract between Bent and Barnes; indeed, the plaintiff says in terms that it is not the purpose of this suit to litigate especially the title to said strip of land which he so purchased of said Barnes, further than to show that he is the owner of it and that the defendants have not so far claimed it, but from time to time tried to buy it of plaintiff, and that its eastern boundary is and lies with the western boundary of said road through it. The prayer of the bill is that the defendants and each of them, by mandatory and restraining order, be commanded to at once remove from said road the obstructions placed thereon by them or any of them, and that they be perpetually enjoined and restrained from any future obstruction of said road or in any manner interfering with the plaintiff or any one else in the proper and legitimate use of and traveling over the same. The bill is not, what it might have been perhaps, a suit to specifically execute the contract with Barnes and to obtain a deed from him for the triangular tract; for it was Barnes and not Trimboli who would under the contract have been required to make the deed to Bent, for whatever land Barnes agreed to convey to Bent was specially excepted from the conveyance of Barnes to Trimboli. The bill is undoubtedly framed upon the theory that Bent had built the road and had taken possession of the triangular tract which Barnes agreed to convey to him in consideration thereof, and that the contract had been so far executed by him; that he was entitled to have his rights protected as against the defendants, whom the bill alleges were obstructing the road. The defendants all demurred to the bill. Vincenzo Trimboli answered separately. No point is made of want of parties in the demurrer or in the answer. On the theory of the bill, conceding that the road had been built according to the contract and had become an established public road, we think the bill presented a proper case for the relief prayed for. The demurrer seems never to have been acted upon by the court below.

33

The defense interposed by Vincenzo Trimboli is, first, that the plaintiff did not construct a good, substantial public road, as provided for in the contract; second, that he did not construct said road on the location provided for in said contract—that by the terms of the contract he was to construct a good and substantial public road at the base of an isosceles triangle to be cut off of the western end of said Barnes tract, said triangle to be seven rods long and five rods wide and to contain about seventeen square rods.

The testimony taken in the cause relates mainly to the character of the road which was built by Bent, to the facts and circumstances surrounding the parties at the time of the contract, and to a determination of the place of location intended. The evidence shows that Bent already had a road substantially on the location on which defendant claims his contract required him to build the new one. Bent produced in evidence what he said was the original pencil plat which he had made in Cumberland, and which the parties had before them when the contract was drawn, showing the location of the proposed road substantially at the place it appears to have been constructed by him. The evidence also shows, that, if built upon the location demanded by the defendant, not only would the road have been constructed practically where the old one was, but would have, as the old one did, crossed over a high bluff on the Barnes land in such a way as to have been of little use either to Barnes or Bent, for access to their respective tracts of land.

The defendant makes the point that the contract of March 26, 1903, calls for a triangular piece of land on the west end of the Barnes tract seven rods long, and five rods wide where it adjoins said road to be constructed, the same containing about seventeen square rods, and that the piece of land which Bent has enclosed is some sixteen rods long and some seven and a half rods wide, along the base of which he has constructed the road. Bent's reply to this evidence is that in his letter to Barnes of December 27, 1902, he called Barnes' attention to the fact that he and those under whom he claimed had had in possession and under fence for about fifteen years about half of the wedge shaped

piece of land and the road through it, and that he wanted
to make the new road along the east side of his Shoe-
maker land, and that when he gave to Barnes the square rods
he was guessing at the area and was measuring not from
the extreme point of the angle described by Barnes' deed,
but from a point some seven or eight rods therefrom
where he and those under whom he claimed had had a
portion of the Barnes tract enclosed. To have built the
new road along the eastern boundary of his Shoemaker
land Bent was obliged to complete it substantially where
he did locate the new road. The fact is, he did locate
the road where it is, and where it was used without
objection or exception by the defendant Vincenzo Trim-
boli; and we think the evidence overwhelmingly shows that
the new road is located where the contract provided it
should be.

Whether the road is of the substantial character pro-
vided for by the contract, there is conflict of evidence.
The point is made that it is not as wide as the law requires
county roads to be, the testimony showing that in some
places it is nine and a half feet in width and at other
points ten and twelve feet; that it is not thrown up and
graded as would be required for a good, substantial public
road. Upon the contrary the evidence shows that Bent
built substantial culverts where the road crosses the stream,
and graded it, and that it is such a road as the demands of
the public travel there required and was probably contem-
plated by the contract; that it passes through the Bent
lands quite a long distance and goes through the Barnes
tract, and that it furnished the only possible means of
access to the Barnes land from the Seneca road and upon
which Trimboli has built his house, and was at the time of
the institution of this suit making constant use thereof.
There was no question but that the road was contracted
for, and that the parties and their successors in title are
entitled to a road according to the contract; that each of
the parties and the public in general are entitled to use
the road free from obstruction or interference by either of
them or by any other person; that their rights arise out of
the contract. It is not a right of way acquired by pre-emp-
tion or by long user by the public, but it has been the

subject of a contract between the parties and their predecessors in title. We do not undertake to decide, as between the plaintiff and Barnes, the right to a specific execution of the contract to convey the triangular tract to Bent. We could not do so, for Barnes is not before the Court; but, as between Bent and Trimboli, and between Bent and all other persons using or entitled to use the road, the plaintiff is entitled by contract to have it remain free and unobstructed as a public road.

Objection is made here that we should not consider the evidence of the plat and the letter of Bent to Barnes of December 27, 1902, to vary the terms of the written contract respecting the place of location of the new road. The evidence of Bent—not contradicted by Barnes, a witness for the defendants—was that these papers were before the parties and were discussed by them at the time of the contract; and we think they are admissible in aid of the ambiguity of the contract as to the actual location of the proposed road—not to contradict the contract, but to be considered in connection with the contract to render certain that which is to some extent uncertain, and as a fact and circumstance surrounding them when the contract was made. A well settled rule of construction based on common sense, says JUDGE GREEN in *Heatherly* v. *Bank*, 31 W. Va. 77, is that when the language of a written contract is susceptible of more than one interpretation—that is to say, is on its face ambiguous—the courts will look at the surrounding circumstances existing when the contract was made, at the situation of the parties and the subject matter of the contract, and will call in the aid of acts done by the parties under it as affording a clue to the intention of the parties. To the same effect are the cases of *Scraggs* v. *Hill*, 57 W. Va. 706, 714; *Crislip* v. *Cain*, 19 W. Va. 438, (Syl. 13;) *Uhl* v. *Railroad Co.*, 51 W. Va. 107.

The circuit court by final decree of May 14, 1904, was of the opinion that the injunction theretofore awarded ought to be wholly dissolved, and it was so dissolved and the bill dismissed. In support of the decree of the court below, appellees contend on the authority of such cases as *Hast* v. *Railroad Co.*, 52 W. Va. 396, *Boyd* v. *Woolwine*, 40 W.

Va. 282, *Dickens* v. *Liverpool*, 41 W. Va. 511, *Talbott* v. *King*, 32 W, Va. 6, and other cases, that land dedicated to public use by the land owner does not become a public highway unless by a valid dedication binding upon him and beyond his power to revoke, or without uninterrupted use for the requisite length of time to conclude him as against the public in the use thereof.    There is no fault with the legal propositions covered by these cases, but they are inapplicable; they apply only to the particular kind of cases there involved.    It certainly cannot be contended that a public road can not be established by deed between parties in interest.    It is true, according to these authorities and others, that a road opened by individual contract between land owners can not impose upon the county authorities the burden of a county road, without acceptance thereof by lawful authority, or by long use and occupation thereof and by actual work done thereon by the public agents.    *Hast* v. *Railroad Co.*, 52 W. Va. 396, 399.    In this case Judge Brannon says:   "It is true we find much law to show that by common law a dedication may be made by an owner of property, which, if accepted by the public by long user, makes the way a public highway for all purposes, even to charge the public with its maintenance and with liability for its defects;" citing Elliott on Roads and Streets, section 154, and 2 Dill. Munic. Corp., section 642. But Judge Brannon says:   "In this state our decisions do not allow the public use of a way to operate as an acceptance of a dedication so as to bind the county;" citing *Talbott* v. *King*, *supra*, and other cases.    In the same connection, however, Judge Brannon says: "If an owner of land lays it out into streets, lots and alleys and sells lots with reference to such streets and alleys by plat or otherwise, it is a dedication of such streets and alleys irrevocable by him, and makes them public as to all lot owners, and consequently as to the general public.    He is estopped to deny them that character;" citing *Ridle* v. *Charles Town*, 43 W. Va. 796, and *Skeen* v. *Lynch*, 1 Rob. 186.    That right which individuals and the public may acquire by long user and dedication, may be also acquired by grant, express or implied.

The point made in argument that the contract implied that

the plaintiff should have the new road adopted as a county road, and that the road in question is not of the required width to become a county road, is equally untenable. A road or way may become a public road by grant, by long user, and the like,. whether it be built of the legal width or not. The contract in this case did not call for a road of any particular width. By the terms of the contract, it was to be a public road substantially built. A breach of the covenant in the contract to build a substantial road may possibly be cause of action between the parties to the contract; but this would not furnish excuse to either of the parties for obstructing the present way.

The point is made also that, conceding-the public character of the road, equity has no jurisdiction to grant relief to the plaintiff. This is a correct proposition, unless the obstruction works special and peculiar injury to him. It is so held in *Wees* v. *Coal & Iron Co.*, 54 W. Va. 421, citing *Talbott* v. *King, supra.* But the converse proposition is equally true: that where the obstruction of the road does work special and peculiar injury to him equity will interfere. What is the fact here? The plaintiff has no other convenient means of access to his Woolwine land than by this road. It renders his property less valuable if the road is obstructed by the defendants. He bought the right of way and gave a consideration for it. Under such circumstances, equity may enjoin obstructions of this character. *Rogerson* v. *Shepherd*, 33 W. Va. 307; *Wees* v. *Coal & Iron Co.*, *supra; Keystone Bridge Co.* v. *Summers*, 13 W. Va. 476. If we affirm that this contract provided for a private and not a public way, equity will then also grant the relief. *Boyd* v. *Woolwine*, 40 W. Va. 282.

We therefore hold that the court below erred in dissolving the injunction and dismissing the bill; and its decree of May 14, 1904, is set aside, reversed and annulled.

And this Court, proceeding to enter such decree as the circuit court should have entered, doth adjudge, order and decree that the defendant Vincenzo Trimboli and the other defendants, their servants and agents and all other persons be and they are hereby perpetually enjoined, inhibited and restrained from erecting or causing to be erected in or on said road, so opened and constructed by plaintiff, any obstruction therein,

and from in any manner interfering with him or the public in general in the legitimate use of and travel over the same; and it is further ordered that the said defendants do at once remove any and all obstructions placed by them or either of them in said roadway. And it is further adjudged, ordered and decreed that the appellee Vincenzo Trimboli do pay to the appellant his costs by him about his prosecution of this appeal expended, as well as his costs in the circuit court.

*Reversed.*