ALBERT ROSE, *et al.*

*v.*

C. F. FISHER, *et al.*

(CC 717)

Submitted January 15, 1947.   Decided March 25, 1947.

*Lon G. Marks,* for plaintiffs.

*Kay, Casto & Amos* and *John S. Haight,* for defendants.

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit Court of Kanawha County by Albert Rose and Lorena Rose against C. F. Fisher and Allie Fisher for the purpose of enjoining the defendants from interfering with the complainants' alleged right to open, improve and use a fifteen-foot alley shown on the plat of what is known as

PLAT OF LOTS
SURVEYED FOR
Leroy Swinburn
CHARLESTON DIST., KANAWHA CO.
WEST VIRGINIA
SCALE — 1" = 100'

CERTIFICATE

We hereby Certify that this Map is an exact Photoprint from map originally filed in the Office of the Clerk of the County Court of Kanawha County, West Virginia, except as to size which may be observed by reference to graphic scale shown on same, unless otherwise CLARK & KREBS INC stored.

By G. R. Krebs President

Acknowledged before me, a Notary Public, for Kanawha County State of West Virginia this 20th day of July, 1923.

My commission expires January 23rd 1924.

the Leroy Swinburn Addition on Woodward Branch, Kanawha County, which is made a part of this opinion. The alley involved runs from the county road on Woodward Branch between Lots 25 and 26 of the named addition north to a road marked "Proposed Road" which is the southern boundary of a tract of 5.76 acres now owned by complainants. From a decree sustaining a demurrer to the bill of complaint and dismissing the cause, this appeal was granted.

The plaintiffs' land is not a part of the Swinburn Addition, according to the plat of that addition recorded in the Kanawha County Court Clerk's office, and made an exhibit with the bill at the suggestion of the circuit court, but, according to the allegations of the bill of complaint, was owned by Leroy Swinburn as a part of the same tract in which the Swinburn Addition lay at the time it was surveyed and the plat prepared and recorded. Therefore, the complainants and the defendants are holding under a common source of title in Leroy Swinburn.

If we correctly read the allegations of the bill of complaint, in the year 1924 Leroy Swinburn owned a tract of what may here be spoken of as twenty-eight acres lying to the north of Woodward Branch and fronting on a county road. A part of this land he laid out as a subdivision of two separate rows of lots, one of twenty-five lots bounded by the county road along Woodward Branch on the south and on the north partly by a proposed road and partly by a road then in use. In addition to the twenty-five lots numbered from 9 to 33 inclusive, facing Woodward Branch, and not connected therewith, but lying east thereof, there is in the subdivision a tier of eight lots lying on a tributary of that branch and facing east or in the direction that Woodward Branch flows. These eight lots also lie on a county road the southern terminus of which intersects with the county road on Woodward Branch. At the back of the row of twenty-five lots on Woodward Branch and running with the back line thereof the plat shows a road marked "Proposed Road" apparently thirty

feet wide which, according to the deed under which the complainants hold, filed with their bill as "Exhibit 1", was evidently intended to be the outlet for the so called "back land." The general direction of the proposed road is from west to east and connects it with what is marked "Present Road" on the plat at the east line of lot 14, the so called "Present Road" continuing from there until it connects with the county road on the tributary of Woodward Branch along which the smaller tier of eight lots face. There is an additional right of way described and granted in the deed under which the complainants hold over lots 7 and 8 of the Swinburn Addition, the description of which refers to exceptions not included in the record now before us. The deed under which the complainants hold does not mention a right of way through an alley in the tier of lots fronting on Woodward Branch nor in any way indicate that the owner of the back or hill land, not a part of the Swinburn Addition, should have a right of way directly to the county road located on Woodward Branch. Apparently the deed to the complainants contemplated that their way of ingress and egress as owners of the back land should be to the county road running north and south on the tributary to Woodward Branch and from thence to the county road on that branch.

The bill of complaint alleges that the alley between lots 25 and 26 is a lawful outlet dedicated for the benefit of the landowners in said subdivision and of the back land, a part of which is owned by the plaintiffs. The bill further alleges the manner in which the Swinburn Addition was created by the recordation of the plat and that after it was laid out Leroy Swinburn sold all of the lots in the subdivision to Harrison Development Company, retaining title to the back or hill land. It will be noted that the plat of the Swinburn Addition indicates neither the ownership nor the location of the back land so that it cannot be said that it was the purpose of the then owner to make the back land a part of the subdivision.

In our opinion the bill of complaint alleges facts which show plainly that the subdivision and the filing of the plat

thereof created an easement in common over the roadways and alleys shown upon the plat for the use of the persons who acquired title to the numbered lots included in the subdivision. The bill of complaint alleges that the alley in question was dedicated to public use. It does not allege facts that would constitute an offer of a dedication of that nature and an acceptance by an authorized public authority. That being so, the facts alleged which undoubtedly show what in this jurisdiction is often spoken of as "private dedication" are, of course, controlling. A dedication of that nature is brought about by simply selling lots according to the description of lots, streets, and alleys shown upon a plat or map, the purchasers acquiring the right to the ordinary use of all the streets and alleys shown upon the plat necessary to the complete enjoyment of their property, but the general public acquiring no proprietary right therein.

Perhaps unfortunately our West Virginia cases seem to recognize dedication of two kinds, i.e., public and private, the public dedication depending upon the acceptance by the appropriate public authority which thereby assumes the responsibility for the maintenance and repair of the public way dedicated. *Hast* v. *Piedmont & C. R. Co.* (1903), 52 W. Va. 396, Syllabus 6, 44 S. E. 155. On the other hand the general authorities are to the effect that dedication is of but one kind requiring an offer by the dedicator and an acceptance by the appropriate public authority. 16 Am. Jur. 359. Apparently under all the cases, however, a dedicatory offer by the recordation or commercial use of a plat of a subdivision creates a common easement in and to the streets and alleys or other passageways exhibited on the plat in favor of those who have purchased land as described by the plat and the general public, distinguishing between the right of the lot owners or purchasers which are proprietary and based upon contract, and those of the general public that are not proprietary and spring from the necessities and conveniences of those persons owning property included within and described by the plat. The interest of the general

public becomes proprietary only upon its acceptance of the dedication and assumption of reasonable upkeep by and through its representative.

The opinion in *Cook* v. *Totten* (1901), 49 W. Va. 177, 38 S. E. 491, discusses the so called "unity rule" by which the purchasers of lots from a plat acquire a common easement over all streets and all alleys shown upon the used plat. That case is frequently cited as sustaining the unity rule. See 1 Elliott on Roads and Streets (4th Ed.) 157, footnote 67, and 2 Thompson on Real Property (Perm. Ed.) 37, footnote 98. However, Syllabus 2 states in effect that each purchaser of a lot is vested with a right appurtenant "to the use of the easement in such streets and alleys *necessary to the enjoyment and value of such lots.*" (Italics supplied.) Nevertheless the body of the opinion at page 180 contains this statement: "Having purchased his lot as part of the plan or addition to a town, he becomes interested in all the streets and alleys thereof for the reason that the value of his lot, together with its proper use and enjoyment is dependent thereon, and if the land owner is permitted to close up one street, he may close them all up, except those immediately abutting the purchaser's lot and thus render it valueless, even though the price paid was in consideration of the dedication of the whole plan to the purposes and uses of a town."

The case of *City of Point Pleasant* v. *Caldwell* (1920), 87 W. Va. 277, 104 S. E. 610, does not involve the private easement appurtenant that arises from sales made from a plat, but turns on the question of the acceptance by a public authority of an offer of public dedication by maintenance or improvement and limits acceptance to the locality of the actual work done.

The case of *Rudolph* v. *Glendale Improvement Co.* (1927), 103 W. Va. 81, 137 S. E. 349, discusses the *Totten* syllabus and opinion and plainly adopts the unity rule as applying to all of the streets and alleys shown upon the plat used in making sale of the lots to which the easement attached. Syllabus 1 in the *Totten* case is substantially

followed by Syllabus 1 in *Griffin* v. *Richardson* (1919), 83 W. Va. 442, 98 S. E. 523. However, the facts in the *Griffin* case did not involve the unity rule since the alley there under consideration was plainly within the "complete enjoyment" area.

In the case of *Pence* v. *Bryant* (1903), 54 W. Va. 263, 46 S. E. 275, this Court stated very plainly, if it did not hold, that an implied acceptance of a dedication existed so as to make a town "chargeable with the street" under a showing that the offer had been made and that it had been accepted by "long use" of the public, not stating the required length of the use nor undertaking to distinguish a casual from a public use. The case of *Talbott* v. *King* (1889), 32 W. Va. 6, 9 S. E. 48, and that of *Boyd* v. *Woolwine* (1895), 40 W. Va. 282, 21 S. E. 1020, neither of which is referred to in the *Pence* opinion on this point, in substance hold to the exact contrary and state plainly that the acceptance of an offered public dedication can be only by the express act of a public authority or by its assuming control in such a manner as the making of improvements, surveying, etc. The case of *Dicken* v. *Liverpool Salt & Coal Co.* (1895), 41 W. Va. 511, Syllabus 3, 23 S. E. 582, holds that the acceptance of an offer of dedication by a public body must appear upon its records, either "directly or by inference."

The first syllabus in the case of *City of Elkins* v. *Donohoe* (1914), 74 W. Va. 335, 81 S. E. 1130, reads as follows:

> "Where an owner causes land to be surveyed and platted into blocks and lots, with avenues, streets and alleys, and sells and conveys lots by numbers and street location as designated on the map thereof duly recorded, he thereby dedicates such avenues, streets and alleys to public use."

That is what is here referred to as a "private dedication."

The *Donohoe* case, decided by this Court in 1914, turned upon the effect of what seems to have been the original plat of the City of Elkins made in the year 1889. While we believe it may be safely assumed that there was an

acceptance by the City of Elkins of the offered dedication arising from the use of the plat upon which its existence as a city rested, thus bringing about a public, as distinguished from a private, dedication, the first syllabus point ignores what most of the West Virginia cases regard as a necessary element of public dedication, i.e., acceptance by public authority. Clearly it cannot be logically said that sales from a plat, even though recorded as required by Code, 39-1-13, alone constitute a public dedication. To say that the public at large thereby acquired a proprietary right to the use of the streets and alleys shown upon a plat and that as a consequence it became the duty of the public authorities to see that they were maintained in reasonably safe condition for public travel would result in charging the public purse with very substantial expenditures at the whim or caprice of every landowner whose holdings were not, perhaps, even connected with the public highways. This, in our opinion, would be an intolerable rule.

In the case of *City of Point Pleasant* v. *Caldwell* (1920), 87 W. Va. 277, 104 S. E. 610, this Court held that an offer to dedicate made by a land company by the recordation of a map of an entire subdivision accompanying a deed containing recitals of the dedication of certain streets and alleys was accepted by the City of Point Pleasant only to the extent that the city assumed control of the streets by making improvements thereof and exercising control thereover, thereby recognizing the principle that a public authority may accept an offered dedication in whole or in part. In that case the question of acceptance turned upon the municipality improving the streets offered and this Court held that the owners of the subdivision could relocate streets, alleys and lots lying within that part of the original plat the offered dedication of which had not been accepted by improving any part thereof. The Court stated in its opinion that an implied acceptance of a dedication arose only where the conduct of the parties concerned was clear and unequivocal, and that in case of doubt no acceptance arose. The land involved had been laid out as a subdivision at a time that it was not included within the

municipal limits. It was subsequently included in North Point Pleasant which was later embraced within the City of Point Pleasant. It is to be noted that in the *Point Pleasant* case the principle of an easement in common or private dedication is not raised nor discussed.

In the case of *Deitz* v. *Johnson* (1939), 121 W. Va. 711, 6 S. E. 2d 231, this Court definitely departed from, if it ever adopted, the so called "unity rule" by holding that purchasers from a recorded plat acquired a proprietary interest in the streets and alleys shown thereon necessary to the complete enjoyment of their property independent of an offered dedication and acceptance thereof by a public authority. The *Deitz* case recognizes also by necessary inference that without public acceptance the public at large acquires no proprietary interest in all of the streets and alleys shown upon a plat from which sales are made, as is contended by complainants here. Certainly if the purchaser of lots acquires no such right in all the streets and alleys, but only in those necessary to the complete enjoyment of his property, the general public acquires no superior right to that bought by contract.

The foregoing cases have been cited and their holdings outlined not because they are directly applicable to the case now before the Court but because they relate to the same subject and show that the West Virginia cases, in spite of their confused discussion, do not adhere to the principle that there is only one type of dedication, but instead recognize both public dedication and what may be termed "private dedication," the latter being what the weight of authority regards as the creation of a common easement appurtenant to the lots sold or disposed of with reference to a plat. In other ways our cases concerning dedication are by no means clear. As to whether the unity rule is controlling in this jurisdiction compare Syllabus 2 in *Rudolph* v. *Glendale Improvement Co.*, 103 W. Va. 81, 137 S. E. 349, with Syllabus 1 in *Deitz* v. *Johnson*, 121 W. Va. 711, 6 S. E. 2d 231. See also *Huddleston* v. *Deans* (1942), 124 W. Va. 313, 21 S. E. 2d 352.

In this case we believe that there is neither a public nor a private dedication of which the complainants can avail themselves. It is not alleged that the County Court of Kanawha County expressly accepted the offered dedication made by the recordation of the Swinburn plat. Neither is it shown that control was exercised over the alley in question by a public authority. To the contrary, the necessity of leveling it by the use of a bulldozer before it can be used is alleged. No long use is claimed. Consequently we arrive at the question of whether there is what some of our West Virginia cases treat as a private dedication. This type of dedication is appurtenant to the land lying within the plat and disposed of by reference to it, and under the holding in the *Point Pleasant* case and the *Deitz* case benefits the lot owners only to the extent that the full enjoyment of their property renders necessary to the owners thereof. This is a contractual right and extends to those only who buy lots or, perhaps, land laid out upon the plat. Here we are not confronted by that question because the so called hill or back land is not represented as a boundary upon the map of the Swinburn subdivision. Of course, the right to use being a right appurtenant, it does not attach to land simply because it lies outside of the platted boundary. A glance at the plat shows that on it there is no way to locate the boundary sought to be benefited. Conceding that the right appurtenant might attach to land not within the boundary divided into lots, streets and alleys, but bounded and shown upon the same plat as lying adjacent thereto, which we do not decide, it would certainly have to be described on the plat or laid out thereon in a manner making its identification possible. Here there is no description of any nature of land lying outside the platted land and not actually divided into lots, streets and alleys. We therefore cannot hold that there was any intention on the part of Leroy Swinburn in recording the plat to establish ways of ingress or egress to his hill or back land. To the contrary, the deed to plaintiffs, which, although not shown by the allegations of the bill, we believe it is safe to as-

sume was substantially based upon the same provision in the deed from Leroy Swinburn, indicates quite clearly that their method of getting to and from their property was contemplated to be by using the roadway marked on the plat "Proposed Road" and the roadway thereon marked "Present Road."

For the foregoing reasons the decree of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*

Fox, PRESIDENT, concurring:

I concur in the opinion prepared by Judge Kenna solely on the ground that the plot of ground owned by plaintiff, and on which he bases his suit, was not included in and as part of the subdivision, the use of the streets and alleys of which he seeks to have decreed to him herein. I do not concur in point one of the syllabus. In my opinion, when the owner of land subdivides the same into lots, streets and alleys, and dedicates such streets and alleys to public use, such dedication becomes effective, not only as to those who purchase lots, but to those who wish to visit or transact business with lot owners, as well. This, of course, amounts to a public use. Where there has been such dedication and lots sold in reliance thereon, it cannot be revoked to the prejudice of a lot owner, but, at any time before acceptance of such dedication by a public authority, the subdivision may be abandoned by the original land owner, or his successor in title, and the land covered thereby reclaimed by the owner, free of such dedication of streets and alleys, so long as such abandonment does not interfere with the full use and enjoyment of lots purchased by others and located in such subdivison. This was the holding in *Deitz* v. *Johnson,* 121 W. Va. 711, 6 S. E. 2d 231. That case, as understood by me at the time it was decided, and as I understand it now, was not a departure from the so-called "unity rule" except, perhaps, that it does permit the abandonment of a subdivision where it can be done without prejudice to persons who have purchased lots therein, a point not clearly established

by prior decisions. I have been speaking of instances where there has been no acceptance of a dedication by a public authority. Of course, where there is such acceptance, the dedication becomes irrevocable unless through some authorized legal proceeding, a street or alley is vacated and closed. Generally speaking, the result of an acceptance of a dedication of a street or alley to public use, by a public authority, is to protect them against private encroachments, however long practiced, and place on that authority the burden of maintaining them as public streets and ways of travel. It does not, in my opinion, have any effect on the right of the public to use the streets and alleys of a subdivision.