647 S.E.2d 829

**Lyon CHAPMAN, Plaintiff Below, Appellee**

v.

**Sylvia CATRON, Defendant Below, Appellant.**

No. 33187.

Supreme Court of Appeals of West Virginia.

Submitted April 4, 2007.

Decided May 11, 2007.

Loudoun L. Thompson, Esq., Thompson & Weatherholt, PLLC, Romney, for Appellant.

Donald P. Cookman, Esq., Cookman Law Office, Romney, for Appellee.

PER CURIAM:

This case is before the Court on appeal from a September 1, 2004, Order of the Circuit Court of Hampshire County, which granted Appellee a permanent injunction, and an August 24, 2005, Order of the Circuit Court of Hampshire County, which found Appellant to be in contempt of court. This Court has before it the petition for appeal, the briefs of the parties, and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the circuit court did not abuse its discretion in granting the permanent injunction. However, this Court finds that the circuit court did abuse its discretion in holding Appellant in contempt of court. Accordingly, this Court affirms the Septem-

ber 1, 2004, Order of the circuit court and reverses the August 24, 2005, Order of the circuit court.

## I.

## FACTS

Plaintiff Lyon Chapman and his son, Scott, and Defendant Sylvia Catron are all landowners in the Capon Bridge Resort Subdivision (the "subdivision"). Catron is the owner of three parcels in the subdivision: Lots 25, 26, and 49. She is also the owner of a certain tract known as the "Barn Tract," which is adjacent to Lot 25. The Barn Tract extends to the middle of a certain 40–foot-wide roadway, known as the Mountaintop Road, which provides access to the subdivision from County Route 15, which is also known as Springfield Grade Road. A certain other tract, known as the "Church Tract," also extends to the middle of the Mountaintop Road. Mountaintop Road, as it traverses both the Barn and Church Tracts, has been used by the residents of the subdivision to access their properties since the subdivision's very inception, which appears to have been nearly 30 years ago.[1] The Barn Tract is further traversed by the Lake Road, which provides access to Lyon and Scott Chapman's properties. This road, too, has been used throughout the subdivision's history. Furthermore, both roads have existed in their present locations for all that time.[2]

At some point, Ms. Catron decided that the use of both roads interfered with her plans for the use of the Barn Tract. Ms. Catron presented her concerns to the Capon Bridge Resort Property Owners Association (the "Owners Association"). A discussion was had amongst the members of the Owners Association, and a vote was taken, with no dissent, to allow Ms. Catron to remedy the problem. Accordingly, Ms. Catron took it upon herself—and at her own expense—to construct new roadways which could be used by residents to access the subdivision.

On January 7, 2004, the Chapmans, along with the New Testament Faith Assembly of God Church (the "church"), filed a complaint in the Circuit Court of Hampshire County alleging that Ms. Catron, had begun work to modify the course of certain platted roads in the subdivision, essentially closing the rights of way of the Chapmans and the church. The Chapmans and the church asked for a temporary injunction as well as a permanent injunction. A temporary restraining order was entered on January 8, 2004, preventing Ms. Catron from further work or construction on the roadways in the subdivision except that which was necessary to return the roads to a passable condition.

On January 21, 2004, Ms. Catron filed a Motion for Temporary Restraining Order seeking to have the church remove certain concrete barriers from the Mountaintop Road. On that same day, she also filed a Motion to Lift Temporary Restraining Order. The court denied both motions.

On June 24, 2004, while laying a line for a well, Ms. Catron's son dug a ditch across the Lake Road which interrupted not only use of the road but also severed the phone line, interrupting phone service to the subdivision's residents. On September 1, 2004, the court entered an order granting a permanent injunction preventing the relocation of either the Mountaintop Road or the Lake Road by Ms. Catron. Ms. Catron moved to set aside the summary judgment and permanent injunction, but the court denied the motion. The court further ordered that all barricades to the road (in particular, those placed by the church) be removed.

On March 16, 2005, the Chapmans petitioned for contempt and for a clarification of

---

1. According to Catron's "Defendants [sic] Brief for the Granting of Defendants [sic] Motion to Temporarily Enjoin the Plaintiffs, New Testament Faith Assembly of God Church, from Blocking the 40 Foot Entrance Road to the Capon Bridge Resort Subdivision from State Route No. 15," filed below on February 13, 2004, the plat to the subdivision was filed on December 19, 1979, and then re-recorded on October 14, 1980, and again on April 29, 1981.

2. There are several plats included in the record, which date back to October 15, 1979, and which are based on a survey performed on January 3, 1973. One of the plats notes that it was revised on October 9, 1980, and then again on April 13, 1981. It is unclear what those revisions were.

the court's prior orders. The court found that Ms. Catron had not returned the property damaged by her road reconstruction and line-digging attempts to its original condition and held her in contempt of the court's prior injunctive orders. She was ordered to return the roadway to its original location within 60 days of the court's August 24, 2005, contempt Order. Ms. Catron now appeals.

## II.

### STANDARD OF REVIEW

■ There are two issues on appeal before this Court. We first address the court's decision to issue the permanent injunction following its grant of summary judgment in favor of the Chapmans. We have held:

" 'Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion. Syl. Pt. 11, *Stuart v. Lake Washington Realty*, 141 W.Va. 627, 92 S.E.2d 891 (1956).' Syl. Pt. 1, *G Corp, Inc. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995)."

Syl. Pt. 1, *Baisden v. West Virginia Secondary Schools Activities Commission*, 211 W.Va. 725, 568 S.E.2d 32 (2002). We review the court's decision to grant the injunction accordingly.

■ We will next address the court's order holding Catron in contempt of court. In reviewing the contempt holding, we are guided by our holding:

"In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and

statutory interpretations are subject to a *de novo* review." Syl. Pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

With those standards in mind, we turn to a discussion of the case.

## III.

### DISCUSSION

■ Ms. Catron argues that the circuit court erred by permanently enjoining her from obstructing, blocking, or closing the Lake Road and the Mountaintop Road. In its Order granting the injunction, the court found that the original owner of the Barn Tract, who was one of the developers of the subdivision, had excluded the Barn Tract from the subdivision, but had granted a right of way across the Barn Tract for the benefit of the subdivision. The court acknowledged that the Mountaintop Road did not appear to be built according to the plat of the subdivision, but found that the roadway had been in existence and had been used since the inception of the subdivision. The court found that a private dedication had, therefore, been established making the roadway a common easement for the benefit of the landowners in the subdivision.

We have observed that:

[t]he mere recording of a plat showing streets and alleys constitutes only a private dedication. The law provides that in this case all lots sold and conveyed with reference to the plat carry with them only the right to the use of the streets appearing on the plat which is necessary to the complete enjoyment and value of the lots.

*Bauer Enterprises, Inc. v. City of Elkins*, 173 W.Va. 438, 441, 317 S.E.2d 798, 800 (1984). To that end, the Court referenced Syllabus Point 2 of *Cook v. Totten*, 49 W.Va. 177, 38 S.E. 491 (1901), in which we held:

When lands are laid off into lots, streets, and alleys, and a map plat thereof is made, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets and alleys necessary to the enjoyment and value of such lots.

*Bauer Enterprises, Inc., supra,* at Syllabus Point.

There is no deed in the record for any of the properties in the subdivision; however, there is no dispute that the Mountaintop Road has been used as the main access to the subdivision for as long as the subdivision has existed. Ms. Catron even acknowledges that she knew when she bought the Barn Tract that the Mountaintop Road provided the subdivision's landowners access to their properties and that the roadway transected the Barn Tract. By the same token, Ms. Catron was aware that the Lake Road has been used for many years by the Chapmans to access their properties. In fact, Ms. Catron doesn't dispute that an easement exists across the Barn Tract. Rather, she simply wants to move the roadway to match the platted roadway.

■ While we could delve into a long analysis about whether a prescriptive easement exists by virtue of the fact that the Mountaintop Road has been so openly used for so many years, we need not. The circuit court was correct: A private dedication exists, which is a common easement for the benefit of the landowners in the subdivision. As the circuit court noted, "A [private dedication] is brought about by simply selling lots according to the description of lots, streets, and alleys shown upon a plat or map, the purchasers acquiring the right to the ordinary use of all the streets and alleys shown upon the plat necessary to the complete enjoyment of their property...." *Rose v. Fisher,* 130 W.Va. 53, 57, 42 S.E.2d 249, 252 (1947). The *Rose* court went on to explain:

> This type of dedication is appurtenant to the land lying within the plat and disposed of by reference to it, and [ ] benefits the lot owners only to the extent that the full enjoyment of their property renders necessary to the owners thereof. This is a contractual right and extends to those only who buy lots or, perhaps, *land laid out upon the plat.*

*Rose v. Fisher,* 130 W.Va. 53, 62, 42 S.E.2d 249, 254(1947) (emphasis added). Though the Barn Tract is not technically a part of the subdivision, it is shown and duly described on the recorded plat, with both Mountaintop Road and Lake Road running through it, leaving no question that the access road to the subdivision was meant to transect the Barn Tract.

■ To be sure, the roadway is not where it ought to be, according to the plat. We recognize that Ms. Catron did not seek to completely and permanently block access to a roadway across the property, but rather that she merely wished to move it to its platted location so as to enhance the value and enjoyment of her own property. However, it was not Ms. Catron's right to move or otherwise reconstruct the road—with or without the consent of the Owners Association—if that reconstruction left any landowners feeling as though their complete enjoyment of their land had been impeded. Accordingly, we cannot find that the circuit court abused its discretion in granting the permanent injunction.

■ However, we do find that the circuit court abused its discretion in later holding Ms. Catron in contempt of the court's Order granting the injunction. The circuit court made only one finding which would lend to its finding of contempt, which was that Ms. Catron had installed a waterline across the roadway and did not return the road to its original condition. It should be noted, though, that that act occurred *before* the injunction was in place. And Mr. Chapman did not present one single shred of evidence to support his petition for a finding of contempt beyond his assertion that Ms. Catron continued to interfere with his use of the roadway and certain pictures of the obstruction of the road which were later shown to have been taken at a time preceding the injunction. To the contrary, Ms. Catron produced the testimony of several witnesses—all residents of the subdivision—who testified that the roadway was not obstructed and that, to their minds, the roadway had been restored to its original condition. Accordingly, the circuit court clearly erred in finding that Ms. Catron had not restored the roadway to its original condition and abused its discretion in holding her in contempt of court.

## IV.

### CONCLUSION

Having established that the lower court did not abuse its discretion in granting a permanent injunction against Ms. Catron but did abuse its discretion in holding Ms. Catron in contempt of court, we affirm the decision of the Circuit Court of Hampshire County in part and reverse the decision in part.

Affirmed in part and reversed in part.